Serafin GONZALEZ, Plaintiff

v.

GE GROUP ADMINISTRATORS, INC.; GE Financial Assurance, Inc.; GE Financial Assurance Holdings, Inc.; Cynthia Pelletier; and Jane Lemanski, Defendants

No. CIV.A.03–30264–MAP.

United States District Court, D. Massachusetts.

June 9, 2004.

Wilfred J. Benoit, Jr., for GE Financial Assurance Holdings, Inc., GE Group Administrators, Inc., Cynthia Pelletier, Defendants.

Anne M. Gaeta, Goodwin Procter, LLP, Boston, MA, David E. Nagle, LeClair Ryan, Richmond, VA, for GE Financial

Assurance Holdings, Inc., GE Group Administrators, Inc., Cynthia Pelletier, Defendants.

Michael O. Shea, Law Office of Michael O. Shea, Springfield, for Serafin Gonzalez, Plaintiff.

*MEMORANDUM AND ORDER WITH REGARD TO MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION FILED ON BEHALF OF GE GROUP ADMINISTRATORS, INC., GE FINANCIAL ASSURANCE HOLDINGS, INC. AND CYNTHIA PELLETIER (Document No. 12)*

NEIMAN, United States Magistrate Judge.

In this employment discrimination action brought by Serafin Gonzalez ("Plaintiff"), three defendants—GE Group Administrators, Inc. and GE Financial Assurance Holdings, Inc. (together "GE"), along with Plaintiff's manager, Cynthia Pelletier, (collectively "Defendants")—have moved to stay proceedings and compel arbitration pursuant to sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4. Although the complaint purports to name two other defendants, one, GE Financial Assurance, Inc., does not exist (see Defendants' Answer at 1 n. 1), and the other, Jane Lemanski, has not been served.[1]

Defendants' motion has been referred to this court as a non-dispositive pre-trial matter pursuant to 28 U.S.C. § 636(b)(1)(A). *See also* Fed.R.Civ.P. 72; Rules 2 and 3 of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts; *Third Millennium Tech.,*

---

1. As to Lemanski, the court recently denied Plaintiff's request for thirty more days, beyond the initial ninety day extension already granted, to complete service of process. (See June 1, 2004 order regarding Document No. 26.)

*Inc. v. Bentley Sys., Inc.*, No. 03–1145–JTM, 2003 WL 22003097, at *1–2 (D.Kan. Aug.21, 2003) ("The district courts that have considered the nature of an order to stay proceedings pending arbitration and to compel arbitration have concluded that these are non-dispositive orders.") (collecting cases). For the reasons described below, Defendants' motion will be allowed.

## I. *BACKGROUND*

Plaintiff instituted this action on November 6, 2003, and filed an Amended Complaint on January 28, 2004. The Amended Complaint contains four causes of action: Counts I and II allege Defendants engaged in "unlawful employment practices"—i.e., "sexual harassment," "gender discrimination," "race/color/ethnicity/national origin/ancestry discrimination" and "retaliation"—in violation of Title VII of the Civil Rights Act of 1967 ("Title VII"), 42 U.S.C. § 2000e et seq.; and Counts III and IV make similar claims under Mass. Gen. L. ch. 151B ("chapter 151B"). In due course, Defendants filed the instant motion to stay proceedings and compel arbitration, Plaintiff tendered an opposition, Defendants filed a reply brief, Plaintiff submitted a supplemental memorandum in opposition, and the court heard oral argument.

The following facts are undisputed for purposes of Defendants' motion. Plaintiff began full-time employment with GE as a Trainer/Auditor on or about March 5, 2001. (Amended Complaint ¶ 8.) Plaintiff claims he was subsequently subjected to unlawful employment discrimination and retaliation, including sexual harassment initiated by both Pelletier, his manager, and Jane Lemanski, his supervisor. (See *id.* ¶¶ 10–20.)

Plaintiff also alleges that he was wrongly suspended and terminated in May of 2002, and that he was otherwise adversely harmed by Defendants' discriminatory practices. (*Id.* ¶ 22.) Thereafter, "Plaintiff timely filed ... state and federal discrimination claims with the Massachusetts Commission Against Discrimination (MCAD), which were dual filed with the Equal Employment Opportunity Commission (EEOC) and withdrawn from the MCAD and EEOC." (*Id.* ¶ 27.)

## II. *DISCUSSION*

■ Defendants argue that a stay should be ordered and arbitration compelled pursuant to sections 3 and 4 of the FAA. In addressing these arguments, the court is mindful of the unabated public policy favoring arbitration, *see Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 148 (1st Cir.1998) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), and *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)), and the fact that the FAA was enacted in order to overcome judicial hostility towards arbitration, *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–21 and n. 6, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

Section 4 of the FAA directs a court, in appropriate circumstances, to issue an order compelling the parties to arbitrate a dispute when one party has failed, neglected or refused to arbitrate in accordance with his agreement to do so.[2] Section 3, in

---

2. In pertinent part, section 4 states as follows: A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration

may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... [U]pon being

turn, allows a court to stay judicial proceedings when any issue therein is "referable to arbitration under an agreement in writing . . . until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As District Judge Nathaniel M. Gorton has observed, in order to compel arbitration pursuant to section 4 and "stay court proceedings pursuant to [section] 3, this Court must find that 1) there exists a written agreement to arbitrate, 2) the dispute in question falls within the scope of that agreement, and 3) the party seeking arbitration has not waived its right to arbitration." *Bowlby v. Carter Mfg. Corp.*, 138 F.Supp.2d 182, 186–87 (D.Mass.2001) (citing *Brennan v. King*, 139 F.3d 258, 263–67 (1st Cir.1998)). Here, Defendants assert, all three conditions are present. The court agrees.

## A. *Existence of a Written Arbitration Agreement*

■ With regard to the first condition, the court finds that a written arbitration agreement clearly exists. On February 20, 2001, before he began his employment, Plaintiff signed a one-page document entitled "Acknowledgment: Conditions of Employment" which stated that his offer of employment was "contingent upon [his] acceptance of the conditions of employment described below." (Document No. 13 ("Defendants' Brief"), Exhibit 1A.) The first condition conspicuously indicated, as follows, that arbitration was the chosen method to resolve certain disputes:

1. I acknowledge that the offer of employment made to me is contingent upon meeting all employment requirements,

including but not limited to the following:

.        .        .        .        .

That I have received and reviewed a copy of the RESOLVE Program Handbook". I agree to resolve disputes in accordance with the terms of the "RESOLVE Guidelines" for Employees of GE Capital and its subsidiaries. Thus, if my date of hire . . . is on or after June 1, 2000, *I agree as a condition of employment, to waive the right to pursue covered claims (as defined in the glossary in the RESOLVE Guidelines and Handbook) in court and to accept an arbitrator's award as the final, binding and exclusive determination of all covered claims.*

(*Id.* (emphasis added).) In other words, Plaintiff agreed as a condition of his employment to resolve disputes of "covered claims" in accordance with the RESOLVE Guidelines, to waive the right to pursue such claims in court and to accept an arbitrator's award with respect to such claims as final.

The RESOLVE Guidelines confirm the fact that a written arbitration agreement exists. They begin with the following statement: "THIS PROCEDURE IS A WRITTEN AGREEMENT FOR THE RESOLUTION OF EMPLOYMENT DISPUTES, WRITTEN PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C.A. SECTIONS 1–14." (*Id.*, Exhibit 1B at 2.) The Guidelines go on to state that "[n]ew employees agree, as a condition of employment, to participate in RESOLVE as the exclusive alternative to filing covered claims in court." (*Id.* at 6.) Continuing, the Guidelines provide that "[n]ew employees who have not resolved

---

satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .

9 U.S.C. § 4.

their covered claims with the Company before the arbitration level of RESOLVE must proceed to arbitration and the arbitrator's decision shall be the final, binding, and exclusive determination of all covered claims." (*Id.*)

Plaintiff does not dispute that a written arbitration exists or that he signed the acknowledgment form. Rather, he offers four arguments why the agreement is not valid: (1) he did not understand the agreement's effect and does not recall getting a copy; (2) the agreement inadequately waived his right to a judicial forum; (3) the agreement lacks consideration; and (4) if the agreement were enforced, he would lose the right to a jury trial, be deprived of the full damages available to him pursuant to Title VII and chapter 151B and be subjected to limited discovery. The court finds none of these arguments persuasive.

Plaintiff's first argument (that he did not understand the agreement's effect and does not recall getting a copy) is undercut by the acknowledgment form itself which states that Plaintiff had "received and reviewed a copy of the 'RESOLVE Program Handbook' " and "accept[ed] the conditions of employment" which the form described. (*Id.*, Exhibit 1A.) Moreover, the only First Circuit case Plaintiff cites supports *Defendants'* position, i.e., that, objectively, Plaintiff understood the written arbitration agreement which he signed. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 21 n. 17 (1st Cir.1999) (citing Massachusetts' traditional rule described in *Tiffany v. Sturbridge Camping Club, Inc.,* 32 Mass.App.Ct. 173, 587 N.E.2d 238, 240 n. 5 (1992) that one is assumed to have read and understood the terms of a contract he signs). Although the court in *Rosenberg* acknowledged that there must be "some minimal level of notice to the employee that statutory claims are subject to arbitration," it eschewed a

"subjective" notice standard "which focuses on what the employee actually knew" about the arbitration provisions. *Id.* at 21 & n. 17.

Plaintiff's second argument (that the agreement inadequately waived his right to a judicial forum) is similarly misplaced. Unlike *Blanchette v. Sch. Comm. of Westwood,* 427 Mass. 176, 692 N.E.2d 21 (1998), which Plaintiff cites, Defendants are not relying upon an arbitration provision (contained in a collective bargaining agreement) executed by someone else. As described, Plaintiff himself signed the agreement, the agreement applied only to him, it was executed prior to the commencement of his employment and he was adequately notified of its existence. As such, Plaintiff is bound by its terms.

■ Plaintiff's third argument (that the agreement is invalid for want of consideration) fares no better. "Consideration can ... be provided by a mutuality of promises to arbitrate. Under Massachusetts law, the requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee." *DeLuca v. Bear Stearns & Co.,* 175 F.Supp.2d 102, 112 (D.Mass.2001) (citations omitted). *See also Pond v. Harris,* 113 Mass. 114, 118 (1873) ("The law is now settled that the mutual promises of the parties in an agreement for arbitration are sufficient consideration each for the other."). These conditions are met here; the acknowledgment form plainly states that Plaintiff's offer of employment was "contingent" upon his acceptance of certain conditions, one of which was his commitment to final and binding arbitration of covered claims arising out of his employment.

Finally, the court finds Plaintiff's fourth argument (if the agreement were enforced he would lose the right to a jury trial, not be entitled to the full damages available to

him under Title VII and chapter 151B and be subjected to limited discovery) unpersuasive as well. As Plaintiff is no doubt aware, the Supreme Court has "rejected most ... arguments" challenging the adequacy of arbitration procedures, like those raised here, "as insufficient to preclude arbitration of statutory claims." *Gilmer,* 500 U.S. at 30, 111 S.Ct. 1647. "Such generalized attacks on arbitration rest on the suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would be complainants, and as such, they are far out of step without current strong endorsement of the federal statutes favoring this method of resolving disputes." *Id.*

Moreover, Plaintiff's damages argument is simply wrong. Plaintiff's assertions to the contrary, the RESOLVE Guidelines allow him to recover all the remedies to which he would be entitled if he pursued his claims in court. (Defendants' Brief, Exhibit 1B at 32 ("The arbitrator shall interpret and apply the law of remedies of the state or the federal circuit, or both, in which the claim arose.... [and] may grant any remedy or relief that would have been available had the claim been asserted in court.").) Indeed, the Guidelines provide that, except for $50 paid by the employee, GE will pay all filing, administrative and hearing room fees, the arbitrator's fee and travel expenses and the expenses of witnesses who are produced at the arbitrator's request. (*Id.* at 33.)

Similarly, Plaintiff's concern about limited discovery is of little moment. As the First Circuit has recognized (again in the *Rosenberg* case Plaintiff cites), "although arbitration discovery procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration." *Rosen-*

*berg,* 170 F.3d at 16 (citing *Gilmer,* 500 U.S. at 31, 111 S.Ct. 1647). As the Supreme Court put it, "there are real benefits to the enforcement of arbitration provisions," i.e., they "allow parties to avoid the costs of litigation." *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 122–23, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). At bottom, the court finds unpersuasive all of Plaintiff's arguments to avoid the parties' agreement to arbitrate.

**B.** *Scope of the Agreement*

■ The court also finds that, at least for the moment, Plaintiff's claims all fall within the scope of the parties' arbitration agreement. "Covered claims" are defined in the RESOLVE Guidelines as "personal, employment-related claims against the Company or individual managers acting within the scope of their employment that a court in the jurisdiction in question would have the authority to decide under any municipal, state, or federal statute, regulation, or application of common law." (*Id.* at 8.) In addition, covered claims "include, but are not limited to ... [e]mployment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law" as well as "[r]etaliation claims for legally protected activity and/or for whistleblowing." (*Id.* at 8–9.) Plaintiff's causes of action appear to fit neatly within these definitions.

Still, Plaintiff notes that, under the RESOLVE Guidelines, "[c]laims against individual managers which do not involve conduct within the scope of the managers' employment" are excluded from the definition of "covered claims." (*Id.* at 9.) And, he argues, the sexual harassment claims against Pelletier (and Lemanski) are such claims. However, not only has Plaintiff

cited no caselaw for this position, his complaint actually asserts that both Pelletier (and Lemanski) were acting within their supervisory capacities. (See Amended Complaint ¶¶ 14, 16.) Perhaps more importantly, the claims themselves assert various "employment" actions taken against him by "the Defendants" collectively, (see, e.g., *id.* ¶¶ 22–24, 31–34, 37–40, 44–47 and 50–52), and even Plaintiff's civil cover sheet describes this as an "employment discrimination" case.

That being said, this court has observed, albeit in a different context, that certain sexual misconduct may not fall within the scope of one's employment. *See Lorenzo v. Gallant*, 2002 WL 31833751, at *13 (D.Mass. Dec.16, 2002) (citing, *inter alia, Canty v. Old Rochester Reg'l Sch. Dist.*, 54 F.Supp.2d 66, 71 n. 6 (D.Mass.1999) ("Sexual misconduct, especially sexual assault and rape, by an employee is not considered an act performed within the scope of his or her employment."), and *Armstrong v. Lamy*, 938 F.Supp. 1018, 1045 (D.Mass. 1996) (public school teacher's sexual contact with student is not within the scope of his employment)), *overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir.2004). For the moment, however, this court concludes that, as pled, all of Plaintiff's claims fall within the scope of the arbitration agreement.[3]

## C. *Waiver*

As a final argument, Plaintiff contends that Defendants have waived their right to arbitration "because [Defendants] litigated the ... claims in the ... MCAD ... and

the ... EEOC ... for approximately 18 months without ever filing a motion to stay in order to arbitrate the Plaintiff's claims." (Plaintiff's Brief at 6.) "It would be grossly unfair," Plaintiff continues, "to allow the Defendant[s] to now avail [themselves] of a completely different forum since [they] suddenly disfavor[ ] the federal court." (*Id.*)

■ At first blush, Plaintiff's argument appears to have some resonance. After careful consideration of the facts and the law, however, the court finds Plaintiff's argument unavailing. First, there is no factual support that Defendants actually "litigated" Plaintiff's claims in the EEOC or the MCAD or that those proceedings lasted eighteen months, and, at oral argument, Plaintiff declined the opportunity to pursue further discovery on this matter. Thus, other than Plaintiff's counsel's unsupported contention in his brief, the only reference to such proceedings is in the Amended Complaint which merely alleges that Plaintiff "timely filed" claims with the MCAD and the EEOC and that those claims were subsequently "withdrawn," presumably by Plaintiff, from those administrative bodies. (Amended Complaint ¶ 27.) For their part, Defendants assert that they simply "cooperated in the [administrative] proceedings and in no way waived their right to compel arbitration by doing so." (Document No. 21 (Defendants' Reply) at 8.)

Second, even assuming the factual accuracy of Plaintiff's assertions, the First Circuit is clear that it is not an employer-defendant's responsibility to raise arbitra-

---

**3.** Plaintiff's suggestion to the contrary, the FAA does not mandate that the action remain in federal court when the claims against one party (e.g. Pelletier) are potentially not arbitrable. On the contrary, "the relevant federal law *requires piecemeal resolution* when necessary to give effect to an arbitration agree-

ment. Under the [FAA], an arbitration agreement *must* be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20, 103 S.Ct. 927 (emphasis added).

tion as a defense in administrative proceedings before the EEOC or MCAD:

> [Defendants]' arbitration arguments do not constitute relevant defenses before the EEOC. As the Supreme Court recently noted, "An individual ... claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action." We see no reason to suppose that the Massachusetts courts would treat [the plaintiff]'s state-law discrimination claims differently. *Therefore, we do not find that [defendants] waived their arbitration defenses by their failure—if failure there was—to raise before either of the administrative agencies contentions that would not have been pertinent defenses in such a forum.*

*Brennan,* 139 F.3d at 263 (emphasis added) (quoting *Gilmer,* 500 U.S. 20 at 28, 111 S.Ct. 1647). Other courts have reached similar conclusions. *See Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1223 (11th Cir.2000) (finding "without merit" argument that employer "waived its right to arbitrate ... by failing to raise the arbitration issue with the EEOC"); *Roberson v. Clear Channel Broad., Inc.,* 144 F.Supp.2d 1371, 1375 (S.D.Fla.2001) (similar); *DeGroff v. MascoTech Forming Techs.,* 179 F.Supp.2d 896, 913 (N.D.Ind. 2001) (employer's "participation in the EEOC's conciliation efforts was certainly not inconsistent with its right to arbitrate" and "a delay in instituting arbitration as a result of participation in EEOC proceedings is insufficient to constitute waiver") (citing cases).

As recently described elsewhere, "[t]he reasoning in these cases is persuasive. It is consistent with the general rule that a party must demand arbitration as early as feasible once [judicial] *litigation* has begun." *Hankee v. Menard, Inc.,* 2002 WL 32357167, at *5 (W.D.Wis. Apr.15, 2002) (emphasis in original). Moreover, "participation in administrative proceedings and arbitration is not mutually exclusive: an aggrieved individual who cannot institute a private judicial action because of an arbitration agreement retains the right to file a charge with the EEOC." *Id.* (citing *Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647).

This very policy is reflected in the RESOLVE Guidelines themselves, which state that nothing therein "is intended to discourage or interfere with the legally protected rights of employees to file charges with government agencies ... [s]uch [as] ... the Equal Employment Opportunity Commission ...." (Defendants' Brief, Ex. 1B at 7.) To be sure, the Guidelines also state that "if an employee files a charge with the EEOC ... or with state or municipal agencies, the Company *may* request the agency to defer its processing of the charge until the employee and the Company have completed the RESOLVE procedure." (*Id.* (emphasis added).) Obviously, however, such a request is not mandated. Thus, a failure by GE to pursue such discretionary deferral does not, as Plaintiff would have it, equate to a waiver of arbitration.

Finally, to find a waiver in the circumstances presented here, would, in this court's view, "undermine the investigatory and conciliatory role that the EEOC and [MCAD] play in enforcing the anti-discrimination laws." *Hankee,* 2002 WL 32357167, at *5. Accordingly, the court concludes that Defendants have not waived their right to arbitration.

## III. *CONCLUSION*

For the reasons stated, the court finds that a written arbitration exists, that all of Plaintiff's claims presently fall within the scope of that agreement and that Defendants have not waived the right to arbitra-

tion. Accordingly, pursuant to sections 3 and 4 of the FAA, the court hereby AL-LOWS Defendants' motion to stay proceedings and compel arbitration. The parties, by December 9, 2004, shall report the status of the arbitration to the court in writing.

IT IS SO ORDERED.