**Willie ELLERBEE, Plaintiff**

v.

**GAMESTOP, INC., Defendant.**

**C.A. No. 08–CV–30187–MAP.**

United States District Court,
D. Massachusetts.

April 2, 2009.

Tani E. Sapirstein, Sapirstein & Sapirstein, PC, Springfield, MA, for Plaintiff.

James A. Resila, Carter, Conboy, Case, Blackmore, Maloney & Laird, PC, Albany, NY, for Defendant.

### MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION (Dkt. No. 5)

PONSOR, District Judge.

## I. INTRODUCTION

Defendant GameStop, Inc. moves to dismiss or, in the alternative, to stay this employment discrimination suit pending arbitration with Plaintiff Willie Ellerbee. Plaintiff is suing Defendant for race discrimination under Mass. Gen. Laws ch. 158B, § 1 and retaliation under Mass. Gen. Laws ch. 158B, § 4. Defendant seeks to enforce an agreement that it contends requires disputes of this kind to be settled by an arbitrator pursuant to the Federal Arbitration Act. 9 U.S.C. §§ 3–4.

For the reasons stated below, Defendant's motion will be allowed, the suit will be dismissed, and the parties will be ordered to proceed to arbitration under the terms of Defendant's "C.A.R.E.S." Program.

## II. FACTS

The court will first briefly summarize Plaintiff's allegations on the merits of his employment discrimination claim before detailing the facts surrounding the arbitration agreement at issue.

### A. Plaintiff's Allegations on the Merits

Plaintiff alleges that Defendant discriminated and retaliated against him on the

basis of race. Plaintiff worked in Defendant's Pittsfield, Massachusetts store from September 2003 through late October 2007. He alleges that he was one of two African Americans working at that store and one of the few minority employees in that district of Defendant's operations.

In June 2007, the store had a position opening and Plaintiff initiated a discussion with his assistant manager over the lack of minority employees in the district. In September 2007, a customer returned an item to the Pittsfield store that was purchased at another location. Plaintiff called the other store, and the second store's manager allegedly inquired about the race of the customer. Plaintiff complained of this incident to the assistant manager and manager of the Pittsfield store. In October 2007, Defendant's district manager questioned Plaintiff about the incident and, Plaintiff alleges, gave him a written warning for his conduct in complaining. Further, in October, Plaintiff did not obtain a promotion to a managerial position when the store chose an allegedly less experienced Caucasian man. Plaintiff was fired on October 25, 2007. The alleged reason was his insubordination.

### B. *The Arbitration Agreement*

In September 2007, Defendant presented Plaintiff with materials relating to its "C.A.R.E.S." Program. This program was introduced to all of Defendant's management at an August 2007 conference. In essence, C.A.R.E.S. set forth the procedures to be followed in a dispute between the company and its employees.

Generally, the program contained three dispute resolution steps. All steps were mandatory. First, an employee could engage in dialogue with a direct supervisor to solve a dispute. Failing that, the next step was an internal review mechanism run by a Human Resources Executive Review Officer. If this step did not resolve the issue, then the dispute went before a neutral arbitrator whose final decision was binding on the employee and Defendant.

The documentation for the program consisted of a Brochure, Dkt. No. 5–7, Parent Aff., Ex. C ("Brochure"), and a more detailed Rules document, Parent Aff., Ex. A ("Rules"). Early in the text, the Brochure notified employees that "if you and GameStop cannot reach a satisfactory resolution of a concern or issue, there is the option of submitting the dispute to a neutral third-party arbitrator." Brochure at 1. The next page of the Brochure stated that, "by continuing employment with GameStop ... you agree to use GameStop C.A.R.E.S .... and to accept an arbitrator's award as the final, binding and exclusive determination of all claims. If there are any differences between this brochure and the GameStop C.A.R.E.S. Rules, the Rules shall control." Brochure at 2.

The Rules were much more detailed than the Brochure. The subtitle of this document, in bold letters, read, "Rules of Dispute Resolution Including Arbitration." Rules at 1. On the first page, the document notified employees that if direct dialogue and internal review were not successful, "the Covered Claim is submitted to a neutral arbitrator who will rule on the merits of your Covered Claim. However, once a Notice of Intent to Arbitrate is filed but before you proceed to arbitration, either you or GameStop may refer the dispute to non-binding mediation." *Id.*

At the bottom of the first page, the Rules specified that "C.A.R.E.S. does not change any substantive rights but simply moves the venue for the dispute out of the courtroom and into arbitration." *Id.* On page two, the provisions stated, "C.A.R.E.S. is an agreement to arbitrate pursuant to the Federal Arbitration Act," "the Rules are an agreement to arbitrate

Covered Claims," and "the company and you agree that the procedures provided in these Rules will be the sole method to resolve any Covered Claim." *Id.* at 2–3. Finally, the Rules preserved an at-will employment relationship. *Id.* The document defined "Covered Claims" to include discrimination claims and required an employee to initiate arbitration after the internal review process to maintain a claim.

It is undisputed that Frank Coletto, manager of the Pittsfield branch, gave the Rules to Plaintiff and other employees. Dkt. No. 9–2, Ellerbee Aff. at ¶ 3. It is disputed whether he also presented Plaintiff with the Brochure. Plaintiff refused to initial a receipt for the Rules and stated that he would have to talk to his lawyer.

Coletto avers that he advised Plaintiff that the Rules were still in effect, regardless of his initialing for receipt, since he had received them personally from a manager and had discussed them. Further, Coletto avers that he told Plaintiff he was bound by the Rules if he continued to work for Defendant, even without an initial for receipt. Dkt. No. 5–15, Coletto Aff. at ¶¶ 3–5. Plaintiff avers that, though he received the Rules, it was not his "understanding" that he agreed to be bound by the C.A.R.E.S. Program by continuing to work for Defendant. Ellerbee Aff. at ¶ 7. Though Plaintiff did not receive "further" information from Defendant, and he did not actually read the Rules, he does not deny discussing the Rules with Coletto. Ellerbee Aff. at ¶ 5.

### III. DISCUSSION

■ Federal law favors arbitration as a method of resolving disputes.[1] 9 U.S.C. § 2. To stay proceedings under 9 U.S.C. § 3 and/or compel arbitration under 9 U.S.C. § 4, the moving party must demonstrate that a "valid agreement to arbitrate exists, that it is entitled to invoke the arbitration clause, that the non-moving party is bound by the arbitration clause, and that the claim asserted comes within the clause's scope." *Campbell v. General Dynamics Corp. et al.,* 407 F.3d 546, 552 (1st Cir.2005). Arbitration is a "matter of contract, and for the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists." *Id.*

Here, the parties do not dispute that Plaintiff's claims come within the scope of the arbitration agreement, and that, assuming the arbitration agreement is valid, Defendant is entitled to invoke it. *See Gonzalez v. G.E. Group Admin., Inc.,* 321 F.Supp.2d 165, 170 (D.Mass.2004). Thus, the key legal issues before the court are whether: (1) the parties formed a valid agreement to arbitrate; and, assuming the agreement existed, (2) Plaintiff was bound by it.

### A. *Formation of an Arbitration Agreement*

■ For a valid arbitration agreement to exist under Massachusetts law, the court must find that: (1) a written agreement exists; (2) the disputed question falls within the scope of that agreement; and (3) the party seeking arbitration has not waived its right to arbitration. *Gonzalez,* 321 F.Supp.2d at 168; *Bowlby v. Carter Manufac. Corp.,* 138 F.Supp.2d 182, 186–7 (D.Mass.2001). It is undisputed that the Rules containing the arbitration agreement were in writing, that the terms of the agreement explicitly covered the dispute,

---

1. The Supreme Court emphasized this point only yesterday. *14 Penn Plaza LLC v. Pyett,* 556 U.S. ——, 129 S.Ct. 1456, ——, 173 L.Ed.2d 398 (2009) (noting that arbitration is favored unless the legislature "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue").

and that Defendant has not waived its right to arbitration.

The essential question is whether Plaintiff accepted the arbitration agreement contained in the Rules document. The court concludes that he did and that he entered into a valid, enforceable agreement to arbitrate his claims with Defendant.

■ In Massachusetts, for a contract such as an arbitration agreement to be binding in the context of an at-will employment relationship, its acceptance by the employee need not be express and in writing. *O'Brien v. New England Telephone Co.*, 422 Mass. 686, 691, 664 N.E.2d 843 (1996). Plaintiff's continued employment constitutes adequate consideration for the contract. *Id.* An employee need not sign for an employment manual, and assent to its terms may be shown if the employee "manifested assent to it, or acknowledged understanding of its terms, or if the employer called special attention to the manual." *Id.* at 693, 664 N.E.2d 843. In such circumstances, if an employer has "provided the rules [to an employee] but she did not read them, that would not save her." *Rosenberg v. Merrill Lynch et al.*, 170 F.3d 1, 21 n. 17 (1st Cir.1999).

■ Thus, the issue of whether the parties validly entered into an arbitration agreement depends on whether Defendant gave "some minimal level of notice to the employee that statutory claims are subject to arbitration____" *Campbell*, 407 F.3d at 554. This is an objective test: "the sufficiency of the notice turns on whether, under the totality of the circumstances, the employer's communication would have provided a reasonably prudent employee notice of the waiver [of the right to proceed in a judicial forum]." *Id.* at 555.

■ As *Campbell* noted, "an employer will be able to satisfy this relatively light burden by producing evidence demonstrating that the employee had actual notice of the agreement." *Id.* Lacking such evidence, courts look to "the method of communication, the workplace context, and the content of the communication." *Id.*

In *Campbell*, an employer notified an employee of an arbitration agreement via e-mail. The e-mail did not contain the text of the policy nor did it mention arbitration. It merely provided two hyperlinks that would have led the employee to the detailed policy. The e-mail did not require a response from the employee nor did the employer log whether the employee clicked-through to the policy. The First Circuit held that such an e-mail would not have raised "a red flag vivid enough to cause a reasonable employee to anticipate the imposition of a legally significant alteration to the terms and conditions of his employment." *Id.* at 557. The e-mail contained neither the arbitration agreement itself nor even clear contractual language. The court noted that the e-mail "undersold the significance of the Policy and omitted the critical fact that it contained a mandatory arbitration agreement." *Id.* at 558.

■ Here, Plaintiff argues that he did not agree to the Rules. He contends that he did not initial for their receipt, that the language of the Rules and Brochure was ambiguous, that they did not state with sufficient clarity that he was waiving his right to a judicial forum, and that the Brochure only notified him of the "option" to arbitrate.

In face of an emphatic federal policy favoring arbitration, neither these arguments nor Plaintiff's attempts to analogize his case to *Campbell* are persuasive. *See, e.g., Bercovitch v. Baldwin Sch.*, 133 F.3d 141, 148 (1st Cir.1998) ("Congress ... intended courts to enforce arbitration agreements and to place [them on] the same

footing as other contracts.") (quotation omitted). Defendant's method of communication, the workplace context, and the content of the communication all indicate that a reasonably prudent employee would have known that a binding arbitration agreement existed.

First, it is undisputed that, though he did not receive the Brochure, Plaintiff was handed the Rules by Coletto. Ironically, only the Brochure contained even arguably vague language. In contrast, the Rules were crystal clear. Second, in his affidavit, Plaintiff does not deny that Coletto notified him of both the binding nature of the arbitration agreement and its scope. Ellerbee Aff. at ¶ 3. He merely avers that these features of the agreement were not his "understanding" and that received no "further" communications from Defendant. For the arbitration agreement to be binding, Defendant was not required to explain C.A.R.E.S. to Plaintiff's satisfaction, to obtain his initials on a receipt, or to ensure that Plaintiff read the document that he was handed by Coletto. Defendant, as noted, was required only to give Plaintiff the information sufficient to put a reasonably prudent employee on adequate notice of the agreement to arbitrate.

There can be no doubt that the Rules specified that the C.A.R.E.S. Program covered arbitration and was binding upon Plaintiff. The language of the first page of the Rules is mandatory and does not suggest the availability of alternative fora. The policy "moves the venue for the dispute out of the courtroom and into arbitration." Rules at 1. Had Plaintiff read the second page, he would have seen further language indicating that the Rules contained a mandatory arbitration procedure. Similar language appeared throughout the Rules document. Indeed, when Coletto sought to elicit confirmation of receipt

from Plaintiff, he called special attention to the Rules.

This case is, if anything, the inverse of *Campbell.* Whereas the agreement in that case was hidden behind two hyperlinks in an e-mail that did not call special attention to a new dispute resolution policy, this agreement was handed directly to Plaintiff, and Defendant both notified him of its contents and called special attention to it by asking for confirmation.

In sum, these undisputed facts show that Defendant's actions would have put a reasonably prudent employee such as Plaintiff on notice of the C.A.R.E.S. Program as a matter of law. Nothing required Defendant to obtain explicit assent from Plaintiff. At the risk of repetition, the court must conclude that Defendant fulfilled its obligations by handing Plaintiff the Rules document, notifying him of its contents, and calling special attention to it by eliciting his confirmation of receipt. In an at-will employment relationship, Plaintiff's continued employment constituted adequate consideration for the agreement. A valid arbitration agreement, binding on him, existed.

### B. *Unconscionability*

As a fallback position, Plaintiff argues that the arbitration agreement was unconscionable under Massachusetts law because it failed to alert him to the waiver of his substantive right to a judicial forum. *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir.2007). Again, Plaintiff's argument is unpersuasive for several reasons.

First, the Rules were abundantly clear that the new policy included mandatory arbitration. They alerted Plaintiff that the "venue" of a dispute would be an arbitral forum. Second, Plaintiff did not indeed lose "substantive rights" since the right to litigate in a judi-

cial forum is a waivable procedural right. *Hurlbut v. Gantshar*, 674 F.Supp. 385, 391 (D.Mass.1987) (holding that "the waiver of the right to a jury trial ... does not render an arbitration clause invalid") (citations omitted). Finally, *Skirchak* is distinguishable since it concerned the waiver of the right to proceed in a class action that was obscure and buried within an extensive policy document. *Skirchak*, 508 F.3d at 57–60. Here, the word "arbitration" was bolded in the subtitle of the Rules and an overview of the procedure appeared on the first page. The provision was not hidden, nor was it couched in non-mandatory language that indicated a judicial forum remained open.

To summarize, the arbitration agreement was not unconscionable under Massachusetts law since the Rules document stated it covered arbitration, set forth the procedures from the first page and contained a waiver in the second, and clearly set forth provisions that were not obscure or hidden from Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion, Dkt. No. 5, is hereby ALLOWED. Pursuant to 9 U.S.C. §§ 3–4, the complaint is dismissed and the parties are ordered to proceed to arbitration under the terms of Defendant's C.A.R.E.S. Program.[2] The clerk will enter judgment for Defendant. This case may now be closed.

It is So Ordered.

---

**2.** Obviously, this ruling is not intended to minimize the seriousness of an allegation of racial discrimination or retaliation, or to offer any opinion on the merits of Plaintiff's claims. These issues will be before the arbitrator.