IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

No. 12-1371

**FILED**

**November 6, 2013**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CARA NEW,
Plaintiff Below, Petitioner

v.

GAMESTOP, INC. d/b/a GAMESTOP;
AARON DINGESS, Individually; and
DAVID TREVATHAN, Individually;
Defendants Below, Respondents

Appeal from the Circuit Court of Logan County
Honorable Roger L. Perry
Civil Action No. 11-C-190

AFFIRMED

Submitted: September 24, 2013
Filed: November 6, 2013

Richard W. Walters, Esq.                    Allyson N. Ho, PHV
Brian L. Ooten, Esq.                        Craig A. Stanfield, PHV
Shaffer & Shaffer, PLLC                     Morgan, Lewis & Bockius, LLP
Madison, West Virginia                      Houston, Texas
Attorneys for Petitioner                    Sam S. Shaulson, PHV
                                            Morgan, Lewis & Bockius, LLP
                                            New York, New York
                                            Joseph M. Price, Esq.
                                            Benjamin W. Price, Esq.
                                            Robinson & McElwee PLLC
                                            Attorneys for Respondents

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.    "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

2.    "'When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.' Syllabus Point 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman,* 225 W.Va. 250, 692 S.E.2d 293 (2010)." Syl. Pt. 5, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, _U.S. _, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)].

3.    "'Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract.' Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*,

i

228 W.Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown,* _U.S. _, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)]." Syl. Pt. 1, *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 729 S.E.2d 808 (2012).

4.       "'Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation.  Generally applicable contract defenses–such as laches, estoppel, waiver, fraud, duress, or unconscionability–may be applied to invalidate an arbitration agreement.'  Syllabus Point 9, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[ , *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)]." Syl. Pt. 2, *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 729 S.E.2d 808 (2012).

5.       "'A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), Syllabus Point 1." Syl. pt. 1, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981).

6.       "'The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified

in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case.' Syllabus Point 12, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[ , *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, __U.S. __, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)]." Syl. Pt. 4, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

7.      "'A determination of unconscionablity must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the "existence of unfair terms in the contract."' Syllabus Point 4, *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia, Inc.*, 186 W.Va. 613, 413 S.E.2d 670 (1991)." Syl. Pt. 6, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

8.      "'A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.' Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[, *overruled*

*in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)]." Syl. Pt. 9, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

9. "'Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.' Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), [*overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)]." Syl. Pt. 10, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

10. "'A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract

of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.' Syl. Pt. 18, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), [*overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)]." Syl. Pt. 11, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

11.    "'Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.' Syllabus Point 19, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), [*overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)]." Syl. Pt. 12, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

12.    "In assessing whether a contract provision is substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation.

If a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable." Syl. Pt. 10, *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 737 S.E.2d 550 (2012).

Per curiam:

The petitioner, Cara New, appeals the October 10, 2012, order of the Circuit Court of Logan County, which granted the motions to dismiss of the respondents, GameStop, Inc., Aaron Dingess, and David Traevathan (collectively referred to as "GameStop"), pending the petitioner's submission of her claims to final and binding arbitration. On appeal, the petitioner argues that she did not enter into a valid arbitration agreement with GameStop. Nonetheless, she argues that even if this Court determines that a valid arbitration agreement exists, the agreement is still unconscionable and unenforceable. We find no error and, accordingly, affirm the circuit court's order.

## I. Factual and Procedural Background

GameStop operates retail stores that sell new and used video games and video gaming hardware. On March 29, 2009, GameStop hired the petitioner as an assistant manager at its store in Logan County, West Virginia. When the petitioner began her employment with GameStop, she received a "Store Associate Handbook" ("the Handbook"), which summarized the company's policies, procedures, and practices. The Handbook further provided that the petitioner did

> not have, nor does this Handbook constitute, an employment
> contract, express or implied. Your employment is not confined
> to a fixed term and may be ended by either you or GameStop,
> Inc. at any time and for any reason. All terms and conditions of

1

employment are subject to change without notice, other than GameStop C.A.R.E.S. Rules for Dispute Resolution.[1]

(Footnote added).

Set forth in a separate, fourteen-page document included with, but set off from, the forty-page Handbook, is the arbitration agreement at issue in this case. This agreement, entitled the "GameStop C.A.R.E.S.[2] Rules of Dispute Resolution Including Arbitration" ("the GameStop C.A.R.E.S. Rules," "the GameStop C.A.R.E.S. program," or "the arbitration agreement"), is a multi-step internal dispute resolution program that includes binding arbitration. Among other things, the document states that the GameStop C.A.R.E.S. Rules

> are a mutual agreement to arbitrate Covered Claims (as defined below). The Company and you agree that the procedures provided in these Rules will be the sole method used to resolve any Covered Claim as of the Effective Date of the Rules, regardless of when the dispute or claim arose. The Company and you agree to accept an arbitrator's award as the final, binding and exclusive determination of all Covered Claims. These Rules do not preclude any employee from filing a charge with a state, local or federal administrative agency such as the Equal Employment Opportunity Commission.

---

[1] The Handbook also advises employees that it "is intended to answer most of your questions, explain our important policies and provide guidelines on our Company's standards and expectations." It includes information about, *inter alia*, GameStop's drug, alcohol and smoke-free policy; "work guidelines" (e.g., the use of name badges; personal and general appearance; schedules, attendance and absence policies; store hours; and parking); proper use of company resources; payroll; safety; loss prevention; performance and promotion; benefits; and standards of conduct.

[2] C.A.R.E.S stands for "Concerned Associates Reaching Equitable Solutions."

2

GameStop C.A.R.E.S. is an agreement to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. Sections 1-14, or if that Act is held to be inapplicable for any reason, the arbitration law in the state of Texas will apply. The parties acknowledge that the Company is engaged in transactions involving interstate commerce.

. . . .

If any court of competent jurisdiction declares that any part of GameStop C.A.R.E.S., including these Rules, is invalid, illegal or unenforceable (other than as noted for the class action, collective action and representative action waiver above), such declaration will not effect [sic] the legality, validity or enforceability of the remaining parts, and each provision of GameStop C.A.R.E.S. will be valid, legal and enforceable to the fullest extent permitted by law.

Nothing in these Rules changes or in any way modifies the parties' employment relationship of employment-at-will; that is, the parties can each end the relationship at any time for any reason with or without cause. The Arbitrator has no authority to alter the at-will nature of your employment.

. . . .

GameStop may from time to time modify or discontinue GameStop C.A.R.E.S. by giving covered employees thirty (30) calendar days notice; however, any such modification or rescission shall be applied prospectively only. An employee shall complete the processing of any dispute pending in GameStop C.A.R.E.S. at the time of an announced change, under the terms of the procedure as it existed when the dispute was initially submitted to GameStop C.A.R.E.S.

Upon being hired by GameStop, the petitioner signed and dated an "Acknowledgment and Receipt of the Store Associate Handbook and GameStop C.A.R.E.S. Rules Including Arbitration" ("the Acknowledgment"). The signed Acknowledgment was

3

on a separate page. In this Acknowledgement, the petitioner specifically agreed that all workplace disputes or claims could not be taken to court, but must, instead, be resolved through the dispute resolution and arbitration system set out in the GameStop C.A.R.E.S. Rules. It stated as follows:

> I acknowledge that I have received a copy of the GameStop Store Associate Handbook, including the GameStop C.A.R.E.S. Rules for Dispute Resolution. The Rules set forth GameStop's procedure for resolving workplace disputes ending in final and binding arbitration. The Handbook summarizes certain information about my job and company policies, procedures and practices. I understand that it is my responsibility to read and familiarize myself with the information contained in the Handbook. I understand that by continuing my employment with GameStop following the effective date of GameStop C.A.R.E.S., I am agreeing that all workplace disputes or claims, regardless of when those disputes or claims arose, will be resolved under the GameStop C.A.R.E.S. program rather than in court. This includes legal and statutory claims, and class or collective action claims in which I might be included. I understand that at any time and for any reason, GameStop may make changes to the Handbook, except for the Rules, without prior notice. I understand that my employment with GameStop is "at will," and that either I or GameStop may end my employment at any time and for any reason.

On September 9, 2011, the petitioner filed a Complaint against GameStop in the Circuit Court of Logan County, alleging wrongful discharge, sexual harassment, hostile work environment, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of the West Virginia Wage Payment and Collection Act. The petitioner alleged that she had been sexually harassed by Respondent Aaron Dingess, the

4

store manager and her direct supervisor, and Respondent David Trevathan, a GameStop district manager who had supervisory authority over both Respondent Dingess and the petitioner. The petitioner further alleged that she was wrongfully demoted and discharged based upon her gender and/or in retaliation for reporting the misconduct of Respondent Dingess to Respondent Trevathan.

In response to the petitioner's lawsuit, each of the respondents filed a separate "Motion to Dismiss Pending Mandatory Arbitration," or, in the alternative, to stay the proceedings pending referral "to arbitration as is required by the GameStop C.A.R.E.S. program which [the petitioner] agreed through her continued employment GameStop would provide the exclusive means by which her claims in this matter would be resolved."

By order entered October 10, 2012, the circuit court granted the respondents' motions to dismiss. This appeal by the petitioner followed.

## II. Standard of Review

The petitioner appeals the circuit court's order granting GameStop's motion to dismiss and compelling her to submit her claims to arbitration. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 194 W.Va. 770, 773, 461 S.E.2d 516,

5

519 (1995). With regard to the circuit court's dismissal order, which directs the petitioner to arbitrate her claims, this Court will preclude enforcement of such an order

> only after a de novo review of the circuit court's legal determinations leads to the inescapable conclusion that the circuit court clearly erred, as a matter of law, in directing that a matter be arbitrated or that the circuit court's order constitutes a clear-cut, legal error plainly in contravention of a clear statutory, constitutional, or common law mandate.

Syl. Pt. 4, *McGraw v. American Tobacco Co.*, 224 W.Va. 211, 214, 681 S.E.2d 96, 99 (2009). With these standards in mind, we proceed to consider the parties' arguments.

## III. Discussion

When reviewing a motion to compel arbitration under an arbitration agreement, a court's consideration of the motion is limited to two issues: is the arbitration agreement valid, and does the agreement cover the plaintiff's claims? As we have explained,

> When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement. Syllabus Point 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

Syl. Pt. 5, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 656, 724 S.E.2d 250, 260 (2011), *overruled in part on other grounds*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)

6

("*Brown I*"). *See also* Syl. Pt. 4, *Ruckdeschel v. Falcon Drilling Co., L.L.C.*, 225 W.Va. 450, 452, 693 S.E.2d 815, 817 (2010).

### A. Validity of arbitration agreement

The petitioner concedes that, if a valid arbitration agreement exists, her substantive claims would come within the scope of that agreement. She asserts, however, that the parties did not form a contract to arbitrate their disputes. Furthermore, she asserts that if a contract was formed, then the contract is unenforceable because it is unconscionable.

By its express terms, the GameStop C.A.R.E.S. program clearly advises its employees that it is an arbitration agreement. It provides that

> GameStops C.A.R.E.S. is an agreement to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. Sections 1-14, or if that Act is held to be inapplicable for any reason, the arbitration law in the state of Texas will apply. The parties acknowledge that the Company is engaged in transactions involving interstate commerce.

In syllabus point one of *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 729 S.E.2d 808 (2012), this Court explained:

> "Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract." Syllabus Point 6, *Brown v. Genesis Healthcare*

7

*Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)].

229 W.Va. at 489, 729 S.E.2d at 811.

In considering whether an arbitration agreement has been validly formed, normal rules of contract interpretation apply. In syllabus point two of *Johnson Controls*, we recognized:

> "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses–such as laches, estoppel, waiver, fraud, duress, or unconscionability–may be applied to invalidate an arbitration agreement." Syllabus Point 9, *Brown v. Genesis Healthcare Corp*., 228 W.Va. 646, 724 S.E.2d 250 (2011) [subseq. History].

229 W.Va. at 489, 729 S.E.2d at 811. *See State ex rel. Clites v. Clawges*, 224 W.Va. 299, 685 S.E.2d 693 (2009) ("While it is clear that the FAA preempts state law that would invalidate 'or undercut the enforcement of arbitration agreements,' the issue of whether an arbitration agreement is a *valid* contract is a matter of state contract law and capable of state judicial review." 224 W.Va. at 305, 685 S.E.2d at 699 (quoting *Southland Corporation v. Keating*, 465 U.S. 1, 16 (1984)). Indeed, this Court has established that the FAA "'does not elevate arbitration clauses to a level of importance above all other contract terms.'" *Johnson Controls*, 229 W.Va. at 493-94, 729 S.E.2d at 815-16 (quoting *Brown I*, 228 W.Va. at 671, 724 S.E.2d at 275). Rather, the FAA "'places arbitration agreements on an equal footing

8

with other contracts, and requires courts to enforce them according to their terms.'" *Johnson Controls*, 228 W.Va. at 494, 729 S.E.2d at 816 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 1142, __ (2010)). *See Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 737 S.E.2d 550 (2012) ("'[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration.'" 230 W.Va. at __, 737 S.E.2d at 555 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). With these principles in mind, we proceed to determine whether the petitioner and GameStop entered into a valid arbitration agreement.

The petitioner does not dispute that she received a copy of the GameStop C.A.R.E.S. Rules which plainly state that it is an agreement to arbitrate under the F.A.A. More importantly, the petitioner does not dispute that the GameStop C.A.R.E.S. Rules evidence a transaction affecting interstate commerce such that it would be governed by the F.A.A. Likewise, she does not dispute that she signed the Acknowledgment of the mutual agreement to arbitrate, which indicated, *inter alia*, that she understood that "by continuing my employment with GameStop . . . I am agreeing that all workplace disputes or claims . . . will be resolved under the GameStop C.A.R.E.S. program rather than in court." However, the petitioner challenges the arbitration agreement, arguing that the disclaimer in the Handbook that "[y]ou do not have, nor does this Handbook constitute, an employment

9

contract, express or implied" renders the arbitration agreement unenforceable. GameStop counters that a valid agreement to arbitrate was formed, as evidenced by the clear and unambiguous language set forth in the GameStop C.A.R.E.S. Rules and the Acknowledgment signed by the petitioner at the time of her employment.

The crux of the petitioner's argument is that, given the disclaimer language in the Handbook, no arbitration agreement was formed because there was no mutual assent or meeting of the minds with respect to arbitration. West Virginia contract law requires mutual assent to form a valid contract. *See Ways v. Imation Enterprises Corp.*, 214 W.Va. 305, 313, 589 S.E.2d 36, 44 (2003) ("'It is elementary that mutuality of assent is an essential element of all contracts.'" (internal citations omitted)).[3] "'In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement . . . .'" *Id.* (quoting *Bailey v. Sewell Coal Co.*, 190 W.Va. 138, 140-41, 437 S.E.2d 448, 450-51 (1993) (citations omitted). Indeed, "[t]he contractual

---

[3]*See also* Syl. Pt. 4, *State ex rel. AMFM, LLC v. King*, __ W.Va. __, __, 740 S.E.2d 66, 69 (2013) ("'The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement.' Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W.Va. 559, 131 S.E. 253 (1926)." Syllabus point 3, *Dan Ryan Builders*, 230 W.Va. 281, 737 S.E.2d 550 (2012).").

10

concept of 'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Group, Inc.*, 222 W.Va. 410, 418, 664 S.E.2d 751, 759 (2008). However, the unambiguous language of the GameStop C.A.R.E.S. Rules that were separate from the Handbook, and the Acknowledgment signed by the petitioner, coupled with the petitioner's continued employment with GameStop, clearly demonstrate that the parties mutually assented to arbitrate all covered workplace disputes or claims. Other jurisdictions are in accord with this view.

In *Patterson v. Tenet Health Care, Inc.*, 113 F.3d 832 (8th Cir. 1997), the Eighth Circuit Court of Appeals considered whether an arbitration provision set forth on the last page of the company's handbook constituted a valid arbitration agreement. The handbook at issue included a disclaimer that it was "'not intended to constitute a legal contract with any employee'" and that "'no written statement or agreement in this handbook concerning employment is binding,'" while also providing that all disputes are to be resolved through binding arbitration. *Id.* at 834. Not unlike the case *sub judice*, the plaintiff employee in *Patterson* also signed an acknowledgment form which stated that there was no contract of employment and that "as a condition of employment and continued employment, I agree to submit any complaints to the published process and agree to abide by and accept the **final decision** of the arbitration panel as ultimate resolution of my complaint(s) for any and all

11

events that arise out of employment or termination of employment." *Id.* at 834-35.  The court in *Patterson* found the arbitration clause to be separate from the handbook provisions stating that the handbook is not a binding contract.  More specifically, the court noted that the arbitration clause was set forth on a separate page of the handbook with a conspicuous heading: "**IMPORTANT!  Acknowledgment Form.**"  *Id.* at 835.  The court was further persuaded by the arbitration clause's use of "contractual terms such as 'I understand,' 'I agree,' I 'agree to abide by and accept,' 'condition of employment,' 'final decision,' and 'ultimate resolution.'" *Id.*  The court concluded that "the difference in language used in the handbook and that employed in the arbitration clause would sufficiently impart to an employee that the arbitration clause stands alone, separate and distinct from the rest of the handbook." *Id.*

Similarly, in *Curry v. MidAmerica Care Foundation.*, 2002 WL 1821808 (S.D.Ind. 2002), the United States District Court for the Southern District of Indiana found that, notwithstanding the disclaimer that the employee "handbook is neither a contract of employment nor a legal document[,]" the language in the arbitration agreement included therein provided that the employee and employer "'voluntarily promise, irrevocably agree,

12

understand, agree to abide by and to accept' the conditions contained [therein] . . . ."[4]  *Id.* at

*2, 4.  The court in *Curry* concluded that this language

> conveys to an employee such as [the plaintiff employee] that the
> arbitration agreement is a separate and distinct part of the
> handbook and constitutes an agreement by the parties.
> Moreover, the arbitration agreement further conveys this . . . by
> expressly stating that '[t]his is the complete agreement of the
> parties on the subject of employment and arbitration of disputes
> and claims.'

*Id.* at *4.  Indeed,

> [a]ny doubt as to whether the arbitration agreement is separate
> from the rest of the employee handbook is resolved by [the
> additional] language . . . that "[the parties] understand that if any
> other provision of this manual is deemed to violate any local,
> state, or federal law or regulation, that this provision stands by
> itself and is fully enforceable to the fullest extent provided by
> law."

*Id.*  The court in *Curry* concluded that mutual assent was present by virtue of the employer

offering the arbitration agreement to the plaintiff as a condition of her employment and the

plaintiff accepting the arbitration agreement by accepting employment.  *Id.* at *5.

Likewise, in *Brown v. KFC National Management Co.*, 921 P.2d 146

(Haw.1996), the Supreme Court of Hawaii concluded that an arbitration agreement was valid

and enforceable even though the "Agreement" section on the plaintiff employee's

---

[4]The plaintiff in *Curry* brought an action alleging pregnancy and disability
discrimination against her former employer.  2002 WL 1821808 at *1.  The court found that
the arbitration agreement purportedly covered those claims.  *Id.* at *4.

13

employment application clearly stated that his employment would be "at will" and "that the application was not an implied or express contract of employment." *Id.* at 150. The court in *Brown* concluded that

> [t]he arbitration agreement . . . is manifestly unambiguous in its expressed intent that employment-related disputes be arbitrated rather then resolved via resort to the federal or state court systems. Indeed, no other construction could be accorded the recitation that "[Employer] and [employee] agree to submit to binding arbitration any controversies concerning [the employee's] compensation, employment[,] or termination of employment[.]"

*Id.* at 159. The court in *Brown* accordingly determined that "on its face, [the arbitration agreement] reflects both mutual assent to the arbitration of employment-related disputes and consideration for that mutual assent." *Id.*, at 160; *see also Lumuenemo v. Citigroup, Inc.*, 2009 WL 371901 at *3 (D.Colo. 2009) (finding that "a reasonable reading of the relevant disclaimer is that it precludes the Handbook provisions from altering the Plaintiff's employment-at-will status, while excepting the Arbitration Agreement from its purview. . . . the language of the disclaimer [is] clear and not ambiguous. Therefore, despite the existence of the disclaimer, . . . the agreement is generally enforceable.").

This Court adheres to the basic principle that "'[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626

14

(1962), Syllabus Point 1." Syl. Pt. 1, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981); *see also id.* at 772, 277 S.E.2d at 618, syl. pt. 2 ("'It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.' *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), Syllabus Point 3.").

In the case *sub judice*, we find that there was a clear and unequivocal intent by both parties to arbitrate. The GameStop C.A.R.E.S. Rules clearly state that it "is an agreement to arbitrate pursuant to the [FAA][;];" that it is "a mutual agreement to arbitrate Covered Claims[;]" and that both GameStop and the petitioner "agree that the procedures provided in these Rules will be the sole method used to resolve any Covered Claim . . . ." The Rules further provide that both GameStop and the petitioner "agree to accept an arbitrator's award as the final, binding and exclusive determination of all Covered Claims." The GameStop C.A.R.E.S. Rules were set apart from the forty-page Handbook and consisted of an additional, separately numbered, fourteen-page document.

Additionally, even a cursory review of the Handbook (such as by an employee receiving it upon employment) reveals that it is merely informative of GameStop's various

15

practices, policies and procedures.[5]  By comparison, the language in the GameStop C.A.R.E.S. Rules is clearly more contractual in nature.  This is demonstrated not only by the language stating that "[t]hese Rules . . . govern" and "are a mutual agreement to arbitrate," "I acknowledge," "I understand," and "I am agreeing," but also by the agreement's provision that "[i]f any court . . . declares that any part of GameStop C.A.R.E.S. . . . is invalid, illegal or unenforceable  .  .  .  such declaration will not effect [sic] the legality, validity or enforceability of the remaining parts, and each provision of GameStop C.A.R.E.S. will be valid, legal and enforceable to the fullest extent permitted by law." *See Patterson*, 113 F.3d at 835; *Curry*, 2002 WL 1821808, at *4.

Furthermore, the petitioner signed the separate Acknowledgment which unequivocally states that the GameStop C.A.R.E.S. Rules "set forth GameStop's procedure for resolving workplace disputes ending in final and binding arbitration. . . . [and] I understand that *by continuing my employment with GameStop . . . I am agreeing that all workplace disputes or claims . . . will be resolved under the GameStop C.A.R.E.S. program rather than in court.*" (emphasis added).  GameStop offered the arbitration agreement to the petitioner as a condition of her employment and the petitioner accepted the agreement by accepting employment.  Clearly, notwithstanding the disclaimer that the Handbook did not constitute a contract of employment, the parties entered into a separate agreement to arbitrate.

---

[5]*See supra,* n.1.

16

"Viewed in context, the arbitration agreement highlights–rather than camouflages–its general purpose and the limited scope of the disclaimer [i.e., to emphasize the employee's at-will employment status] is clear and unambiguous . . . ." *Brown*, 921 P.2d at 165. The GameStop C.A.R.E.S. Rules and the Acknowledgment signed by the petitioner expressly provided that the parties agreed to submit all covered claims to arbitration. The fact that the Handbook did not constitute an employment contract "in no way undermines this simple reality." *Id.*[6]

---

[6]The GameStop C.A.R.E.S. Rules were previously considered in *Ellerbee v. GameStop, Inc.*, 604 F.Supp.2d 349 (D.Mass 2009). In *Ellerbee*, the District Court of Massachusetts addressed "[t]he essential question [of] whether Plaintiff accepted the arbitration agreement contained in the Rules document." *Id.* at 354. The plaintiff argued, *inter alia*, that he did not agree to the GameStop C.A.R.E.S. Rules and "that he did not initial for their receipt." *Id.* In concluding that the plaintiff had entered into a valid agreement to arbitrate with GameStop, the *Ellerbee* court reasoned, *inter alia*, that the GameStop C.A.R.E.S. Rules were given to the plaintiff; were "crystal clear;" and that the evidence showed that the store manager advised the plaintiff "of both the binding nature of the arbitration agreement and its scope." *Id.* at 355. The court stated that, under Massachusetts law, "[f]or the arbitration agreement to be binding, [GameStop] was not required to explain C.A.R.E.S. to Plaintiff's satisfaction, to obtain his initials on a receipt, or to ensure that Plaintiff read the document he was handed . . . ." *Id.* Rather, GameStop "was required only to give Plaintiff the information sufficient to put a reasonably prudent employee on adequate notice of the agreement to arbitrate." *Id.* The court in *Ellerbee* found that "[t]here can be no doubt that the Rules specified that the C.A.R.E.S. Program covered arbitration and was binding upon Plaintiff . . . . [t]he Rules contained a mandatory arbitration procedure." *Id. See also Pomposi v. GameStop, Inc.*, 2010 WL 147196 *4, 5 (D.Conn. 2010) (holding that former GameStop store manager executed valid agreement to arbitrate claims upon receiving C.A.R.E.S. Program documents and executing written acknowledgment. "[T]he Plaintiff's continued employment in this case was not the only evidence of his assent to the C.A.R.E.S. program, as he also signed an acknowledgment in which he expressly agreed to resolve claims under C.A.R.E.S." The court concluded that the plaintiff "expressly agreed to resolve any employment-related dispute . . . through binding arbitration."); *McBride v. GameStop, Inc.*, 2011 WL 578821 *2 (N.D.Ga. 2011) (determining that, under Georgia contract law, offer and acceptance of GameStop arbitration agreement existed: evidence of offer included that copy of C.A.R.E.S. policy was given and explained to plaintiff, flow chart depicting

17

Upon consideration of the foregoing, we conclude that, given the clear and unambiguous language of the Acknowledgment and the GameStop C.A.R.E.S. Rules, the petitioner and GameStop entered into an agreement to arbitrate the petitioner's claims. *See Bennett*, 166 W.Va. at 772, 277 S.E.2d at 618, syl. pts. 1 and 2.[7]

## B. Unconscionability

The petitioner next argues that if it is determined that the parties entered into an agreement to arbitrate, as we have concluded, then it was an unconscionable contract of adhesion and, therefore, unenforceable. *See Johnson Controls*, 229 W.Va. at 489, 729 S.E.2d at 811, syl. pt. 2 (holding that defense of, *inter alia*, unconscionability "may be applied to invalidate an arbitration agreement"). GameStop counters that even if it is determined that the arbitration agreement was a contract of adhesion, it was not unconscionable. This court has explained the doctrine of unconscionability as follows:

> The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the

arbitration policy was displayed in store, and policy was made available in store manual and on GameStop intranet; acceptance occurred when plaintiff signed Acknowledgment form–which plaintiff had duty to read–and GameStop's actions of distributing and displaying information about C.A.R.E.S. process "would have put a reasonably prudent employee on notice of the agreement to arbitrate.").

[7]Given our conclusion that the terms of the GameStop C.A.R.E.S. Rules and the Acknowledgment are clear and unambiguous as to the parties' mutual intent to arbitrate, we need not address the petitioner's argument that they were ambiguous by virtue of the disclaimer.

18

contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case. Syllabus Point 12, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds*, __U.S.__, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)].

Syl. Pt. 4, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 385, 729 S.E.2d 217, 220 (2012) ("*Brown II*").

Our analysis of whether the arbitration agreement at issue is "'unconscionable necessarily involves an inquiry into the circumstances surrounding [its] execution and the fairness of [it] as a whole.'" *Id.* at 385, 729 S.E.2d at 220, syl. pt. 5, in part (quoting Syl. Pt. 3, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986).).[8] Furthermore,

[a] determination of unconscionablity must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the "existence of unfair terms in the contract." Syllabus Point 4, *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia, Inc.*, 186 W.Va. 613, 413 S.E.2d 670 (1991).

---

[8]"'Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court.'" *Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 7 (quoting *Troy Mining Corp.*, 176 W.Va. 559, 346 S.E.2d at 749, syl. pt. 1); *see also Dan Ryan Builders*, 230 W.Va. at __, 737 S.E.2d at 552, syl. pt. 9 ("A court in its equity powers is charged with the discretion to determine, on a case-by-case basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability.").

19

*Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 6.[9]

There is a growing body of case law in West Virginia which has indicated that this Court chooses to "analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability." *Id.* at 392, 729 S.E.2d at 227; *see also State ex rel. Richmond American Homes of W.Va., Inc. v. Sanders*, 228 W.Va. 125, 136, 717 S.E.2d 909, 920 (2011). As we held in syllabus point nine of *Brown II*,

> "[a] contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)].

229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 9; *see also Johnson Controls*, 229 W.Va. at 490, 729 S.E.2d at 812, syl. pt. 6. Applying this sliding scale analysis, as discussed in more detail

---

[9]However, we have recognized that "'[i]n most commercial transactions[,] it may be assumed that there is some inequality of bargaining power, and this Court cannot undertake to write a special rule of such general application as to remove bargaining advantages or disadvantages in the commercial area, nor do we think it is necessary that we undertake to do so.'" *Johnson Controls*, 229 W.Va. at 495, 729 S.E.2d at 817 (quoting *Ashland Oil, Inc. v. Donahue*, 159 W.Va. 463, 474, 223 S.E.2d 433, 440 (1976)).

below, we find that the arbitration agreement at issue is neither procedurally nor substantively unconscionable.[10]

### 1. Procedural Unconscionability

With regard to procedural unconscionability, this Court has stated as follows:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)].

*Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 10; *see also Johnson Controls*, 229 W.Va. at 490, 729 S.E.2d at 812, syl. pt. 7.

This Court has recognized that it is not uncommon for procedural unconscionability to begin with a contract of adhesion. *Brown II*, 229 W.Va. at 393, 729

---

[10] For a recent discussion on the use of a sliding scale in assessing unconscionablity, *see* Melissa T. Lonegrass, "Finding Room for Fairness in Formalism – The Sliding Scale Approach to Unconscionability," 44 Loyola U. Chi.L.J. 1 (2012).

S.E.2d at 228; *Sanders*, 228 W.Va. at 137, 717 S.E.2d at 921. In syllabus point eleven of

*Brown II*, we held that

> A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person. Syl. Pt. 18, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds*, _U.S._, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)].

229 W.Va. at 386, 729 S.E.2d at 221. *See Sanders*, 228 W.Va. at 137, 717 S.E.2d at 921.

We have also recognized that "'[a]dhesion contracts' include all 'form contracts' submitted

by one party on the basis of this or nothing[.]" *Clites*, 224 W.Va. at 306, 685 S.E.2d at 700.

However, as a practical matter, given that

> "the bulk of contracts signed in this country . . . are adhesion contracts, a rule automatically invalidating [such] contracts would be completely unworkable. Instead[,] courts engage in a process of judicial review[.] Finding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not."

*Id*. (quoting *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 557, 567 S.E.2d 265, 273 (2002)

(internal citation omitted)); *see also Brown II*, 229 W.Va. at 393, 729 S.E.2d at 228; *Sanders*,

228 W.Va. at 137, 717 S.E.2d at 921.

22

In the case *sub judice*, the petitioner argues that although she was aware that her employment at GameStop was at will, she claims that she was never advised that she was agreeing to arbitrate future claims against the company simply by signing the Acknowledgment. The petitioner argues that she is a high school graduate who was unemployed when she sought employment with GameStop[11] and that she possessed no bargaining power against GameStop, an international corporation. She contends that she was required to sign the Acknowledgment if she wished to be employed by GameStop; that "there were no meaningful alternatives available" to her; and that "[t]here was no negotiation." GameStop counters that there is simply no evidence that the petitioner, who was twenty-seven years old and qualified for employment as a GameStop Assistant Manager, was not capable of understanding the clear import of the Acknowledgment that stated: "I understand that . . . I am agreeing that all workplace disputes or claims . . . will be resolved under the GameStop C.A.R.E.S. program rather than in court." GameStop further argues that the petitioner had the ability to reject its offer of employment.

Notwithstanding her assertions to the contrary, the petitioner has failed to offer any evidence that she was incapable due to age, literacy or lack of sophistication to understand the clear terms of the arbitration agreement or the Acknowledgment she signed

---

[11]The petitioner represents that she had previously been employed at a gas station and held only a few part time jobs prior to working at GameStop.

23

upon her employment.[12] *See Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 10. She has also failed to offer any evidence that the arbitration agreement's terms were hidden from her or were couched in unduly complex terms. The petitioner's bald assertions that the arbitration agreement is procedurally unconscionable because the agreement was not subject to negotiation and because she was unemployed and had no other "meaningful alternatives available to her" other than to sign the Acknowledgment are simply not sufficient. *See Montgomery v. Applied Bank*, 848 F.Supp.2d 609, 616 (S.D.W.Va. 2012) (concluding that where plaintiff failed to offer evidence "that she had no other alternative but to enter into a credit card agreement with . . . defendant[,] . . . [she] wholly fail[ed] to put forth any evidence that the Agreement was procedurally unconscionable other than her assertion that [it] was a contract of adhesion, which . . . does not in itself make a contract procedurally unconscionable."); *Clites*, 224 W.Va. at 306, 685 S.E.2d at 700 (finding that although arbitration agreement entered into upon plaintiff's employment was a contract of adhesion because the "entire Agreement is boiler-plate language that was not subject to negotiation and there is no contention . . . that the Petitioner had any role or part in negotiating [its] terms[,]" the agreement was not unconscionable). There is simply no evidence in the record to show that the manner or setting in which the petitioner signed the Acknowledgment

---

[12]The petitioner concedes that she did not seek to introduce evidence or otherwise develop a factual record regarding whether her age, literacy, or lack of sophistication precluded her from understanding the GameStop C.A.R.E.S. Rules or the Acknowledgment form she signed.

24

prevented her from having a reasonable opportunity to understand the terms of the agreement.

Furthermore, the petitioner's claim that she was not advised that she was agreeing to arbitrate furture claims against GameStop by signing the Acknowledgment is without merit. As previously established, the language of the Acknowledgment was abundantly clear: "I understand that . . . I am agreeing that all workplace disputes or claims . . . will be resolved under the GameStop C.A.R.E.S. program rather than in court." "A court can assume that a party to a contract has read and assented to its terms, and absent fraud, misrepresentation, duress, or the like, the court can assume that the parties intended to enforce the contract as drafted." *Adkins v. Labor Ready, Inc.*, 185 F.Supp.2d 628, 638 (S.D.W.Va. 2001). *See Sedlock v. Moyle*, 222 W.Va. 547, 551, 668 S.E.2d 176, 180 (2008) (stating that "'in the absence of extraordinary circumstances, the failure to read a contract before signing it does not excuse a person from being bound by its terms. . . . [and] [t]he person who fails to read a document to which he places his signature does so at his peril.'" quoting *Reddy v. Cmty. Health Found. of Man*, 171 W.Va. 368, 373, 298 S.E.2d 906, 910 (1982)). The petitioner does not point to any evidence "to rebut the presumption that a party to a contract is charged with knowledge of its terms." *Adkins*, 185 F.Supp.2d at 638. Further, the petitioner does not allege that she was fraudulently induced to enter into the

25

arbitration agreement or that she did so under duress or as the result of misrepresentations by GameStop. *Id.*

As previously discussed, upon her employment with GameStop, the petitioner was presented with the GameStop C.A.R.E.S. Rules, at which time she was also presented with and signed the Acknowledgment. It is beyond cavil that the stated purpose of the Acknowledgment was to make clear to the petitioner that by continuing her employment with GameStop, she agreed to submit all covered disputes to arbitration. The petitioner fails to offer any evidence demonstrating that the arbitration agreement was procedurally unconscionable because it "involve[d] . . . inadequacies that result[ed] in the lack of a real and voluntary meeting of the minds . . . ." *Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 10. Accordingly, we conclude that the petitioner has failed to demonstrate that the arbitration agreement is procedurally unconscionable.

### 2. Substantive Unconscionability

With regard to substantive unconscionability, this Court has held as follows:

> Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns. Syllabus Point

26

19, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds*, __U.S. __, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)].

*Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 12; *see also Dan Ryan Builders*, 230 W.Va. at __, 737 S.E.2d at 552, syl. pt. 8.

The petitioner argues that, under the terms of the arbitration agreement, there is no mutual obligation to arbitrate because the agreement gives GameStop the unfettered and unilateral right to modify or discontinue the GameStop C.A.R.E.S. program. The petitioner contends that this provision renders the agreement substantively unconscionable and, therefore, unenforceable. GameStop counters that the agreement does not give it the unfettered right to change or discontinue the C.A.R.E.S. program; to the contrary, GameStop argues that, under the terms of the agreement, it is required to give employees thirty days notice of any modification to, or rescission of, the GameStop C.A.R.E.S. program, and any such modification or rescission is to be applied prospectively only. Therefore, GameStop argues that the arbitration agreement is not substantively unconscionable and, as a result, is enforceable.

This Court has recognized that "'[s]ome courts suggest that mutuality of obligation is the locus around which substantive unconscionability analysis revolves[]'" and that, "'[i]n assessing substantive unconscionability, the paramount consideration is

27

mutuality.'" *Sanders*, 228 W.Va. at 137, 717 S.E.2d at 921 (internal citations omitted). *See*

*Dan Ryan Builders*, 230 W.Va. at __, 737 S.E.2d at 558 (stating that "the lack of mutuality

in a contractual obligation–particularly in the context of arbitration–is an element a court may

consider in assessing the substantive unconscionability of a contract term"). Moreover,

"'[a]greements to arbitrate must contain at least "a modicum of bilaterality" to avoid

unconscionability.'" *Sanders*, 228 W.Va. at 137, 717 S.E.2d at 921 (internal citation

omitted); *see also Brown II*, 229 W.Va. at 393, 729 S.E.2d at 228.


> As we held in syllabus point ten of *Dan Ryan Builders*,
>
>> In assessing whether a contract provision is substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation. If a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable.

230 W.Va. at __, 737 S.E.2d at 552. With regard to GameStop's right to modify or

discontinue the GameStop C.A.R.E.S. program, the arbitration agreement states as follows:

> GameStop may from time to time modify or discontinue GameStop C.A.R.E.S. by giving covered employees thirty (30) calendar days notice; however, any such modification or rescission shall be applied prospectively only. An employee shall complete the processing of any dispute pending in GameStop C.A.R.E.S. at the time of an announced change, under the terms of the procedure as it existed when the dispute was initially submitted to GameStop C.A.R.E.S.

Thus, contrary to the petitioner's argument that the foregoing provision gives GameStop the unfettered right to alter or rescind the GameStop C.A.R.E.S. Rules, the clear language of this provision limits GameStop's ability in this regard by requiring it to give covered employees thirty days notice of any modification or rescission, which "shall be applied prospectively only." Furthermore, any dispute pending at the time GameStop modifies the agreement is to proceed "under the terms of the procedure as it existed when the dispute was initially submitted . . . ." This provision does not render the arbitration agreement substantively unconscionable.

A similar provision was considered in *Martin v. Citibank, Inc*., 567 F.Supp.2d 36 (D.C.C. 2008), in which the United States District Court for the District of Columbia concluded that "in order to modify terms of the [arbitration] policy, defendant must provide thirty (30) days advance notice to employees, barring any 'unfair retroactive application of amendments.'" *Id*. at 45. The court in *Martin* determined that, based upon this language, it was "satisfied that requiring defendant to provide thirty days notice of prospective modifications affords employees sufficient protection against inequitable assertions of power." *Id. See Hardin v. First Cash Financial Services*, 465 F.3d 470, 478 (10th Cir. 2006) (concluding that clause in arbitration agreement providing that defendant employer "'retains the right to terminate the [Agreement] and/or modify or discontinue the [Dispute Resolution Program]'" was valid because employer was required to provide ten days notice

to current employees, not amend the agreement if it had actual notice of a potential dispute or claim, and not terminate the agreement as to any claims which arose prior to the date of termination); *Seawright v. Amer. Gen'l. Financial Services*, 507 F.3d 967, 975 (6th Cir. 2007) (determining that although the "defendant companies reserved the right to terminate the [Employee Dispute Resolution program] at any time, they also agreed to be bound by the terms of the agreement for 90 days after giving reasonable notice of the termination and as to all known disputes arising before the date [of] termination. Thus, the companies were bound by the terms for at least 90 days after the agreement came into effect. This reciprocal obligation to arbitrate at least those claims arising in the 90-day period after the effective date of the agreement satisfies the mutuality requirement." (footnote omitted)); *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418 *6 (C.D.Cal. 2013) (holding that arbitration agreement that "shall be effective thirty (30) calendar days after such amendments are provided. . . and will apply on a going forward basis" is not substantively unconscionable); *Lumuenemo*, 2009 WL 371901 at *5 (holding arbitration provision valid where defendant's right to modify or change agreement was not unrestricted reasoning that "if Defendant decides to modify or terminate the agreement, the change will not become effective until Defendant has provided its employees 30-days notice[,] . . . [and] any alterations would apply prospectively only . . . ."); *Brackett v. Gen'l. Dynamics Armament*, 2010 WL 2628525 *3 (D.Me.2010) (concluding that employee's challenge of, *inter alia*, employer's right to change or terminate arbitration agreement upon thirty days notice only as to claims not yet filed is

30

not unconscionable because it is an "ordinary, some would say desirable, incident[] of arbitration and dispute resolution procedures").

As previously established, the GameStop C.A.R.E.S. Rules are "a mutual agreement to arbitrate" under which both GameStop and the petitioner "agree that the procedures provided in these Rules will be the sole method used to resolve any Covered Claim" and that an arbitrator's decision is final and binding. GameStop's limited ability under the arbitration agreement to modify or discontinue the GameStop C.A.R.E.S. Rules in no way negates the parties' mutual agreement to arbitrate. GameStop is required to give employees thirty days notice of any modification or rescission and any such modification or rescission may only be applied prospectively. Furthermore, if a dispute is pending at the time a modification to the program is made, such disputes are to proceed under the terms of the program as they existed when the dispute was initiated. This provision and its effects are not overly harsh and in no way "create[] a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to" GameStop. *Dan Ryan Builders*, 230 W.Va. at__, 737 S.E.2d at 552, syl. pt. 10. We, therefore, conclude that the provision that permits modification does not render the arbitration agreement substantively unconscionable.[13]

---

[13]The petitioner also argues that the GameStop C.A.R.E.S. program is substantively unconscionable because it shortens the statute of limitations within which the petitioner may bring her claims. However, GameStop's position before both the circuit court and this Court

## IV. Conclusion

Based upon all of the above, the October 10, 2012, circuit court order dismissing the petitioner's claims pending their submission to final and binding arbitration is hereby affirmed.

Affirmed.

---

is that the petitioner's claims are not barred under the arbitration provision and that the state law claims alleged by the petitioner are subject to the two-year statute of limitations applicable to the petitioner's claims. This is also consistent with the GameStop C.A.R.E.S. Rules which provide that "[t]he Notice of Intent to Arbitrate must be received within the time period allowed by law applicable to the Covered Claim at issue, just as if you were proceeding in court." As the Rules further make clear, "[t]his is commonly referred to as a statute of limitations and is the period of time that is provided by law for bringing a claim." *See Pomposi*, 2010 WL 147196 at *12 (holding that "under the plain language of the agreement, the only mandatory deadline imposed by C.A.R.E.S. is the one imposed by law, namely, the deadline provided by the statute of limitations applicable to the claim in dispute."). Therefore, given GameStop's position that the arbitration provision above does *not* shorten the statute of limitations within which the petitioner may bring a claim under state law, we need not address the petitioner's argument that the provision is substantively unconscionable.

32