**No. 13-0467 - Mark B. Owen, Respondent Below, Petitioner,**
**v. Tina M. Owen, Petitioner Below, Respondent**

**FILED**

**June 4, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Ketchum, Justice, dissenting:**

I dissent from the holding of the majority which affirms the decisions of the family court and the circuit court invalidating the Owens' December 8, 1981, prenuptial agreement.

The family court judge found that the prenuptial agreement was executed by Ms. Owen "voluntarily and under circumstances free from fraud, duress or misrepresentation." Although the agreement was prepared by Mr. Owen's counsel, Ms. Owen elected not to consult with independent counsel prior to signing the document. Nevertheless, the family court judge invalidated the prenuptial agreement because Ms. Owen did not have "adequate knowledge" of the agreement's contents or its legal consequences. In so ruling, the family court made clear that its decision was *not* based on a finding that the agreement was unconscionable or involuntarily executed by Ms. Owen.

In affirming the decision to invalidate the prenuptial agreement, the circuit court stated that it could not find that the family court committed clear error or abused its discretion. The majority now affirms the circuit court and states that Mr. Owen failed to meet his burden of establishing the agreement's validity.

1

The standards of review applied by the circuit court and the majority to the decision of the family court judge, while helpful, are no substitute for the true facts surrounding the signing of the prenuptial agreement. Both Mr. Owen and Ms. Owen had previous marriages to other individuals and had gone through previous divorces. Thus, Ms. Owen necessarily had some knowledge of the landscape of marriage with the possibility of divorce at the time she signed the agreement with Mr. Owen. She also knew that a prenuptial agreement concerned the distribution of property. Moreover, Ms. Owen was aware of Mr. Owen's financial condition and his reluctance to experience another divorce proceeding similar to his first divorce which cost him a great deal of money.

Most important, Ms. Owen voluntarily chose not to read the December 8, 1981, prenuptial agreement before she signed it. A review of the record reveals that the brief filed by Mr. Owen is accurate when it states:

> Multiple people, including her father and sister, did not want her to sign the prenuptial agreement. Despite this, through her own choice and four days prior to the wedding, Ms. Owen chose not to retain or consult with an attorney of her choosing and signed the agreement, without bothering to extensively read it. . . . She knew it benefitted Mr. Owen, dealt with distribution, and was to make sure it would not be so costly for him to dissolve a future marriage with her as it was for him to dissolve his first marriage. Even without reading the agreement, she had this knowledge.

2

Recently, in *New v. Gamestop, Inc.*, 232 W.Va. 564, 753 S.E.2d 62, 76 (2013), we confirmed the following principle: "A court can assume that a party to a contract has read and assented to its terms, and absent fraud, misrepresentation, duress, or the like, the court can assume that the parties intended to enforce the contract as drafted." *See also Reddy v. Community Health Foundation*, 171 W.Va. 368, 373, 298 S.E.2d 906, 910 (1982) ("[T]he failure to read a contract before signing it does not excuse a person from being bound by its terms.").

In this action, the prenuptial agreement was found to have been executed by Ms. Owen "voluntarily and under circumstances free from fraud, duress or misrepresentation." Ms. Owen had a responsibility to read the agreement before signing it and consenting to be bound by it. The majority's holding to affirm the decisions invalidating the prenuptial agreement is incorrect.

Therefore, I dissent.