IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0467

_____

FILED

**June 4, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MARK B. OWEN,
Respondent Below, Petitioner

v.

TINA M. OWEN,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Harrison County
The Honorable James A. Matish, Judge
Civil Action No. 11-D-543

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED
WITH DIRECTIONS

_____

Submitted: March 25, 2014
Filed: June 4, 2014

Debra Tedeschi Varner, Esq.                 Larry W. Chafin, Esq.
Mark E. Gaydos, Esq.                        Debra V. Chafin, Esq.
Allison S. McClure, Esq.                    Law Offices of Debra V. Chafin
McNeer, Highland, McMunn                    Clarksburg, West Virginia
and Varner, L.C.                            Counsel for the Respondent
Clarksburg, West Virginia
Counsel for the Petitioner


The Opinion of the Court was delivered PER CURIAM.

JUSTICE KETCHUM dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of the law to the facts under an abuse of discretion standard. We review the questions of law de novo." *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.      "One attorney may not represent, nor purport to counsel, both parties to a prenuptial agreement." Syl. pt. 4, *Ware v. Ware*, 224 W. Va. 599, 687 S.E.2d 382 (2009).

3.      "For the presumption of validity to apply to a prenuptial agreement, both parties to that agreement must be represented by independent counsel. Moreover, where one party to a prenuptial agreement is represented by counsel while the other is not, the burden of establishing the validity of that agreement is on the party seeking its enforcement. To the extent that Gant v. Gant, 174 W.Va. 740, 329 S.E.2d 106 (1985), and its progeny hold otherwise, they are overruled." Syl. pt. 5, *Ware v. Ware*, 224 W. Va. 599, 687 S.E.2d 382 (2009).

Per Curiam:

This appeal seeks the reversal of the order of the Circuit Court of Harrison County, entered March 25, 2013, that affirmed the Family Court of Harrison County's ruling and order that invalidated a prenuptial agreement[1] and further distributed the parties' assets. The petitioner raises two issues in this appeal. The first issue is whether the family court improperly invalidated the parties' prenuptial agreement. The second is whether the family court properly distributed the parties' marital estate, by giving appropriate credit to the petitioner for his premarital worth and for the value of his inheritance from his family. For the reasons cited herein, we affirm the portion of the circuit court's order that invalidated the prenuptial agreement, we reverse the portion of

---

[1] W. Va. Code § 48-1-203 (2009) defines the phrase "antenuptial agreement" or "prenuptial agreement" as follows:

> "Antenuptial agreement" or "prenuptial agreement" means an agreement between a man and woman before marriage, but in contemplation and generally in consideration of marriage, by which the property rights and interests of the prospective husband and wife, or both of them, are determined, or where property is secured to either or both of them, to their separate estate, or to their children or other persons. An antenuptial agreement may include provisions that define the respective property rights of the parties during the marriage, or upon the death of either or both of the parties. The agreement may provide for the disposition of marital property upon an annulment of the marriage or a divorce or separation of the parties. A prenuptial agreement is void if at the time it is made either of the parties is a minor.

*See Ware v. Ware*, 224 W. Va. 599, 687 S.E.2d 382 (2009).

1

the order that affirmed the family court's distribution of marital assets and we remand this case for further proceedings consistent with this opinion.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The petitioner, Mark B. Owen ("Husband"), and the respondent, Tina M. Owen ("Wife"), were married to each other on December 12, 1981. Prior to this marriage, the Husband and Wife had each been married before and both had custody, or partial custody, of the children born of these earlier marriages. At the time of their marriage the Husband was 38 years of age and the Wife was 23 years of age. Four days before the wedding, the parties signed and executed a prenuptial agreement drafted by C. David McMunn, an attorney who had previously represented the Husband in other matters.[2] At the time of the entry of the agreement, the wedding date had not been scheduled. Lawyer McMunn served as the notary public when the prenuptial agreement was signed by the parties. The Wife was not presented a copy of the proposed agreement prior to signing it. The Husband, however, had the opportunity to and did make changes to the agreement. The family court found that at the time of the execution of this prenuptial agreement, Lawyer McMunn spoke with the Wife in general terms about these

---

[2] Lawyer McMunn previously drafted a prenuptial agreement for the Husband when the Husband was contemplating marrying another woman. The agreement drafted for the Husband and Wife's use was a modification of that previous prenuptial agreement.

types of agreements but did not review the specific terms of the agreement with either party. After the agreement was executed, the Wife contends that she did not receive a copy of the executed prenuptial agreement until she filed her first petition for divorce in 2005.

The prenuptial agreement contained a provision that the Husband and Wife would hold all real property they currently possessed free and clear of any claim of dower or curtesy on the other's part. The agreement also stated that the Husband and Wife's personal property holdings would be free and clear of the other's claims. The prenuptial agreement contained a waiver on both the Husband's and Wife's parts to waive the right to request or receive spousal support. In the event children were born of the marriage, the parties agreed to equally support the children and demand no more than one-half of the support from the other parent. Consideration for this agreement was stated to be love and affection.

The prenuptial agreement contained a stipulation that the Wife acknowledged that the Husband's net worth had been disclosed to her and was in excess of $94,000. The Husband acknowledged that the Wife's net worth had been disclosed to her and was in excess of $7,000. Within this provision was a statement that both the Husband and Wife had received the advice of counsel and that the agreement was being entered into freely and with a full understanding of its provisions.

3

After the parties were married, they lived together and raised their children from previous marriages, as well as the two children born of their marriage to each other. In 2005, the Wife filed a petition seeking divorce; however, the parties reconciled and continued their marriage. On August 18, 2011, the Wife filed another petition for divorce. The Husband and Wife continued to reside in the same home until November of 2011. In his answer to the divorce complaint, the Husband requested enforcement of this prenuptial agreement. It is the contention of the Wife that at the time of the execution of this agreement, she did not have knowledge of the extent of the Husband's assets.

In the course of the divorce proceedings, the family court held separate hearings on the validity of the prenuptial agreement. At the conclusion of these hearings, the family court entered an order on January 9, 2012, that invalidated the prenuptial agreement, on the grounds that the Wife did not enter into the agreement with full knowledge of the contents of the agreement and the legal effect of that agreement. The family court found that the prenuptial agreement was executed voluntarily and under circumstances free from fraud, duress or misrepresentation. The family court found that it was undisputed that the Wife did not have the advice of independent counsel at the time she signed the agreement, despite the express language in the agreement stating otherwise. It was contested and disputed whether Lawyer McMunn ever conveyed to the Wife that he could represent her interests. The family court found that prior to the

4

execution of the prenuptial agreement, the Husband told the Wife that Lawyer McMunn represented both of their interests. However, the family court found that while "it is arguable that the [Wife] has the *opportunity* to consult with independent counsel prior to the signing of the agreement, the Court finds [Wife] to be truthful in her claims that respondent assured her that Mr. McMunn represented both of their interests."

The family court order included a section entitled "Additional observations." In this section, the family court stated that it did not base the invalidation of the prenuptial agreement on unconscionability, but surmised that if asked to, it would likely find the agreement to be unconscionable because it "subverts all of the West Virginia statutory and judicial concepts of equitable distribution" by excluding items from marital property, by not addressing debts and by eliminating the parties' rights to make claims against the other's estate. The family court also questioned the provisions regarding the payment of child support, noting that West Virginia law assesses child support proportionately to each parent depending upon income, so that the children will enjoy the standard of living that each parent has. The family court also noted that the Husband was a savvy business person who was in the habit of acquiring assets, had a higher income potential and had more to gain from excluding all future acquisitions from the marital estate. The family court noted that "this one-sidedness coupled with the provisions of the Agreement which are contradictory to public policy could potentially invalidate the agreement based upon unconscionability."

5

On January 30, 2012, the Husband sought a stay of the family court's order. The family court declined to issue the stay. On February 6, 2012, the Husband filed an appeal of the order that found the prenuptial agreement unenforceable, or, in the alternative, sought a writ of prohibition against the family court, claiming that the family court committed error when it invalidated the prenuptial agreement. On February 9, 2012, the circuit court denied the request for a stay of the family court order, denied the appeal because the order was not a final order subject to appeal, and instructed the Husband to file the petition for a writ of prohibition as a separate civil action. The Husband filed this separate action on March 6, 2012.[3]

After the entry of the order invalidating the prenuptial agreement, the family court entered a separate order granting the parties a divorce and distributing the marital property. The family court found that the home in which the parties resided, which was titled solely in the Husband's name, had a value of $530,000 and that this property was part of the marital estate, because the prenuptial agreement had been invalidated. The family court also found that $15,000 in proceeds from the sale of a

---

[3] The circuit court dismissed the petition for writ of prohibition on August 14, 2012, finding that the Husband had not requested a hearing and that the family court had entered a final divorce decree that could still be appealed.

6

jointly-held condominium in Canaan Valley had been applied to the purchase price of the marital home.

The family court further found that the Husband had received an inheritance in the form of stocks, cash and the proceeds from the sale of his family's home that totaled $142,912. The Husband used some of this money to pay off the mortgage on the marital home. The Husband argued that the payment of the mortgage indebtedness on the marital home was made with his sole and separate property: the proceeds from his inheritance. The family court found that the Husband had failed to show that the reduction of the mortgage on the marital residence was made with funds that were clearly his separate property.

The family court ultimately divided the parties' marital estate equally and required the Husband to pay the Wife the sum of $417,273 to accomplish this division.[4] In addition, the family court awarded attorney fees and costs to the Wife, including $3,000 for the cost of defending the writ of prohibition sought by the Husband after the prenuptial agreement was deemed unenforceable.

---

[4] Additional relief was granted in the family court's final order, including an award of permanent spousal support to the petitioner and distribution of other property.

The Husband and Wife each pursued appeals of the family court's orders to the circuit court. The Husband argued that the prenuptial agreement was valid, and that the family court erred in not giving him credit for using a portion of his $142,000 inheritance to pay off the marital home. The Husband also argued that the family court erred by not giving him credit for his pre-marital worth of $94,000, as reflected in the prenuptial agreement.[5] The Wife's assertions of error before the circuit court included the attribution of income in the amount of $1,500 per month and the failure to include the debt on her automobile in valuing the marital property. Both parties appealed the award of attorney fees. The Husband contested the award of $15,000 in attorney fees to the Wife for an appeal, and the award of $3,000 in fees associated with defending the Husband's petition for writ of prohibition. The Wife argued that the family court abused its discretion by reducing the amount of non-attorney fees and costs that were submitted for reimbursement.

---

[5] Additional grounds for error asserted in the circuit court appeal, but not in the present appeal, include the inclusion of four ounces of gold that was the Husband's sole property into the marital estate; the failure of the family court to include the value of the liquidated IRA in the Wife's name into the marital estate; failure of the family court to give the Husband credit for a $22,000 loan to the Wife; failure to give the Husband credit for payments made on the marital home between the date of separation and the entry of the final decree (commonly referred to as *Conrad* credits); and the award of spousal support.

The circuit court affirmed the majority of the order, reversing only that portion of the order that awarded attorney fees to the Wife for defending the writ of prohibition filed by the Husband. The circuit court found that the family court did not have jurisdiction to award attorney fees for a matter in circuit court and reversed the family court order. Regarding the credit for the value of his separate estate, the circuit found that the family court did not err by failing to reduce the value marital estate by $94,000, which was the Husband's premarital worth. The circuit court affirmed the family court's ruling that the agreement was unenforceable. The circuit court agreed that the Wife did not consult with independent legal counsel prior to signing the agreement.

From this order the Husband pursues this appeal.

## II.

## STANDARD OF REVIEW

This Court's well-established standard of review was articulated in the sole syllabus point in *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004):

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of the law to the facts under an abuse of discretion standard. We review the questions of law de novo.

## III.

9

# ANALYSIS

This appeal raises two issues: Whether the prenuptial agreement was properly deemed to be unenforceable and whether the Husband should have received credit for his premarital worth and for the use of his separate property to reduce the indebtedness on the marital home.

## A.     Prenuptial agreement

Both the family court and circuit court ruled that the prenuptial agreement was unenforceable because although the agreement was executed voluntarily and without fraud, duress or misrepresentation, the Wife did not have knowledge of its contents and legal effect at the time it was signed.

In 1985, we addressed the validity of prenuptial agreements. We held that prenuptial agreements are presumed to be valid. In syllabus point 1 of *Gant v. Gant*, 174 W. Va. 740, 329 S.E.2d 106 (1985), we held that

> [p]renuptial agreements that establish property settlements and support obligations at the time of divorce are presumptively valid in West Virginia; the burden of proving the invalidity of such an agreement is upon the person who would have the agreement held invalid.

We also addressed what is required for a prenuptial agreement to be held valid.

> The validity of a prenuptial agreement is dependent upon its valid procurement, which requires its having been

executed voluntarily, with knowledge of its content and legal effect, under circumstances free of fraud, duress, or misrepresentation; however, although advice of independent counsel at the time parties enter into a prenuptial agreement helps demonstrate that there has been no fraud, duress or misrepresentation, and that the agreement was entered into knowledgeably and voluntarily, such independent advice of counsel is not a prerequisite to enforceability when the terms of the agreement are understandable to a reasonably intelligent adult and both parties have had the opportunity to consult with independent counsel.

Syl. pt. 2, *Gant*, 174 W.Va. 740, 329 S.E.2d 106.

In 2009, we again examined the role of counsel in the preparation and execution of these agreements. We held that "[o]ne attorney may not represent, nor purport to counsel, both parties to a prenuptial agreement." Syl. pt. 4, *Ware v. Ware*, 224 W. Va. 599, 687 S.E.2d 382 (2009).

For the presumption of validity to apply to a prenuptial agreement, both parties to that agreement must be represented by independent counsel. Moreover, where one party to a prenuptial agreement is represented by counsel while the other is not, the burden of establishing the validity of that agreement is on the party seeking its enforcement. To the extent that Gant v. Gant, 174 W.Va. 740, 329 S.E.2d 106 (1985), and its progeny hold otherwise, they are overruled.

Syl. pt. 5, *Ware v. Ware*, 224 W. Va. 599, 687 S.E.2d 382 (2009).

The Husband argues that basic contract principles require a reversal of the lower courts' decisions. He submits that because the Wife, whom he deemed a "reasonably-intelligent adult," was capable of understanding what she was signing. He

11

argues that the Wife should have read what she was signing and that by signing the prenuptial agreement, she is deemed to have read it, understood it and is therefore bound by its terms. The Wife argues that our holdings in *Gant* and *Ware* support the lower courts' decisions, and that without the opportunity for independent legal counsel, the prenuptial agreement cannot be enforced.

*Gant* and *Ware* each acknowledge the role of independent and separate legal counsel for all signatories to a prenuptial agreement. In *Gant* we held that the independent advice of an attorney is not a prerequisite to enforcing the agreement, so long as the terms of the agreement are understandable to a reasonably intelligent adult and both parties have had the chance to speak and consult with independent counsel. Syl. pt. 2, *Gant*. In *Ware*, we modified that holding to reflect that for the agreement to be presumptively valid, both parties to a prenuptial agreement must be represented by independent counsel. We further held where one party to the agreement is not represented by counsel, that the burden of establishing the validity of a prenuptial agreement is on the party who was represented by counsel. Syl. pt. 5, *Ware.*

The family court noted and recognized as we do that the events surrounding the execution of the subject prenuptial agreement took place 30 years prior to the ruling on its enforceability. The memories of the parties could be clouded, so the family court relied upon the document itself as the most reliable evidence as it relates to the execution

12

of the agreement. Within the prenuptial agreement itself is a statement that the Wife "has had the advice of counsel." It was disputed whether the Husband represented to the Wife that his attorney could represented them both. The attorney who prepared the prenuptial agreement at the request of the Husband testified that he discussed with the Wife that he could not represent her. Despite this knowledge, and this statement by counsel, the executed agreement itself still contained the statement that the Wife had been assisted by an attorney.

Regardless of these inconsistencies, it is undisputed that the Wife did not have independent legal counsel. Under *Ware*, the burden shifts to the husband to show the agreement was valid. While the lower courts found that the agreement was entered into voluntarily, without evidence of fraud, duress or misrepresentations, the lower courts also found that the Wife did not sign the agreement with knowledge of its contents and legal effect. There was no specific explanation of the rights she was waiving, especially those associated with property acquired during the course of the marriage that would be deemed marital property, subject to equitable distribution. Lawyer McMunn's testimony that he did not go over the provisions of the agreement in detail with the Wife, but that he discussed only the general concepts of a prenuptial agreement, was unrebutted by the parties. Applying the principles in *Gant* and *Ware* to the case at bar, we find that the family court and circuit court properly deemed this prenuptial agreement unenforceable. The burden of persuasion below rested with the Husband, the party who was seeking to

13

establish the validity of the contract. He failed to meet this burden. We see no abuse of discretion on the part of the lower courts in rendering this prenuptial agreement unenforceable.

## B. Equitable distribution

Having affirmed the decision to render the prenuptial agreement unenforceable, we turn to the question of whether the family court properly distributed the marital estate. The Husband argues that the value of his premarital worth, a fact established within the prenuptial agreement, should have been deducted from the marital estate. In addition, the Husband argues that he should be entitled to a credit for the amount of his inheritance that was utilized to pay off the indebtedness against the marital home.

W. Va. Code § 48-1-237(1)–(2) (2001) defines separate property as (1) property acquired by a person before a marriage; and (2) property acquired by a person during marriage in exchange for separate property which was acquired before the marriage. The family court's order did not specifically address the premarital worth of either party. By failing to do so, the family court did not give credit, where due, for what was clearly the separate property of the Husband and the Wife. We find this to be reversible error and remand this matter for determination of both the Husband and Wife's pre-marital worth.

14

Regarding the Husband's inheritance, W. Va. Code § 48-1-237(4) (2001) includes "property acquired by a party during marriage by gift, bequest, devise, descent or distribution" as separate property. While acknowledging the inheritance was received and was separate property, the lower courts did not credit the amount of the inheritance because the Husband failed to provide information about the payoff amount of the mortgage and whether the funds had been commingled. Neither did the lower courts consider whether payment of the marital home mortgage converted the uncommingled inheritance proceeds into marital property. This, too, was error, and requires us to remand this matter for such determinations.

On remand, the family court is directed to determine whether the Husband commingled the proceeds of his inheritance. The court is further directed to determine what amount of money was utilized from the Husband's uncommingled inheritance to reduce the mortgage indebtedness. Further, the court is directed to give both parties credit for their premarital worth, facts to be determined by the court.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm that portion of the circuit court's order that ruled that the prenuptial agreement was unenforceable. We reverse the portion of the

15

order that affirmed the family court's failure to give the Husband credit against the marital estate for the payment of marital indebtedness with the proceeds of his uncommingled inheritance, and remand with directions to determine what if any portion of such funds may have constituted marital property. We also reverse the portion of the order that affirmed the family court's failure to give the parties credit for their premarital worth. We remand this case for further proceedings related to the equitable distribution of the parties' marital estate, with appropriate credit being given for the reduction of the indebtedness on the marital home that was attributable to the inheritance and for the parties' premarital net worth.

Affirmed, in part; reversed, in part; and remanded, with directions.

16