# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**GREG ASHLEY,**
**Claimant Below, Petitioner**

**FILED**

October 10, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 16-1194** (BOR Appeal No. 2051385)
                    (Claim No. 2014028569)

**CORNERSTONE INTERIORS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Greg Ashley, by Reginald Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Cornerstone Interiors, Inc., by Steven Wellman, its attorney, filed a timely response.

The issue on appeal is the percent of permanent partial disability for injuries to the low back, left arm and shoulder. On February 4, 2015, the claims administrator granted 16% permanent partial disability for the lumbar sprain and left upper extremity. On April 23, 2015, the claims administrator granted 0% permanent partial disability for the cervical spine. The Office of Judges reversed the claims administrator's February 4, 2015, decision and granted 3% permanent partial disability in its June 17, 2016, Order. It also affirmed the claims administrator's April 23, 2015, decision. The Order was affirmed by the Board of Review on November 21, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Greg Ashley, a carpenter, was injured on March 27, 2014, when he fell from scaffolding. He was treated at Stonewall Jackson Memorial Hospital for complaints of left hip, elbow and shoulder pain. CT scans of the cervical and lumbar spines showed no evidence of an acute injury. He was diagnosed with acute closed fracture of the left upper radius, acute cervical strain, and acute lumbar strain.

1

Prior to his work injury, Mr. Ashley had been treated for complaints of lumbar and cervical spine pain. On September 1, 2010, Scott Lester, M.D., noted Mr. Ashley had a history of chronic back and neck pain. He had tendinopathy and a partial cuff tear in the right shoulder. The diagnoses included chronic back pain. On June 24, 2012, Mr. Ashley was seen in the emergency room at Beckley ARH Hospital with a chief complaint of neck and shoulder pain which he had been experiencing for about two weeks. He was diagnosed with chronic pain syndrome and cervical radiculitis.

Rajesh Patel, M.D., started treating Mr. Ashley on December 9, 2013. He noted Mr. Ashley had been having problems with his neck and back for about five years, including numbness into his hands and into his left leg. A 2010 lumbar MRI film showed an annular tear at L5-S1 and L5-S1 disc bulging. A December 5, 2009, MRI film showed C5-C6 disc bulging. Dr. Patel diagnosed L5-S1 annular tear, lumbar radiculitis, cervical disc bulging at C5-C6, cervical radiculitis, and cervicalgia. On January 15, 2014, Dr. Patel noted Mr. Ashley was having pretty severe pain in his neck and lower back into his legs. He added lumbar degenerative disc disease and cervical degenerative disc disease as diagnoses. On March 12, 2014, Mr. Ashley was still having pain in his back and neck which he rated a nine and ten, respectively, on a scale of one to ten. Dr. Patel recommended follow-up MRIs of the lumbar and cervical spines as these would be helpful in determining whether Mr. Ashley needed injections or surgical intervention.

Mr. Ashley was seen by Matthew Nelson, M.D., on April 4, 2014. Mr. Ashley denied any previous shoulder, back, or elbow pain. Dr. Nelson diagnosed sprain and strain of unspecified site of the shoulder and upper arm, closed fracture of proximal end of left radius, and lumbar sprain/strain. Also on April 4, 2014, the claims administrator held the claim compensable for a lumbar sprain, neck sprain, and left elbow fracture. On April 8, 2014, the claims administrator added left shoulder sprain as a compensable diagnosis per the request of Dr. Nelson. On April 29, 2014, the claims administrator added left wrist scaphoid fracture as a compensable diagnosis per the request of Dr. Nelson.

An April 30, 2014, cervical spine MRI revealed a right paracentral disc protrusion at C5-C6 with bilateral facet degenerative changes and mild bilateral neuroforaminal narrowing. This was compared to a December 5, 2009, cervical spine MRI and no change was noted. A lumbar spine MRI revealed concentric bulging and mild left lateral protrusion of the desiccated L5-S1 intervertebral disc along with small marginal osteophytes and facet hypertrophy, resulting in encroachment on the lateral recess; encroachment on L3-L4 and L4-L5 left recesses by mild disc bulging, shallow right paracentral disc protrusion at C5-C6. There was no significant change when compared to a January 24, 2010, lumbar MRI.

Mr. Ashley underwent an arthroscopy of the left shoulder for a labral and rotator cuff repair on June 9, 2014. The pre-operative diagnosis was left shoulder rotator cuff tear. The post-operative diagnosis was left shoulder partial rotator cuff tear and grade three chondromalacia of the humeral head of the glenoid.

Jerry Scott, M.D., performed an independent medical evaluation regarding Mr. Ashley's lumbar spine and left upper extremity on November 4, 2014. Dr. Scott diagnosed rotator cuff tear of the left shoulder and left proximal radius fracture, lumbar sprain, and either a distal radius fracture or a scaphoid fracture. Mr. Ashley had evidence of pre-existing degenerative diseases of the left shoulder. Dr. Scott assessed 10% impairment for the left upper extremity and 7% impairment for the lumbar spine, which he combined for a total of 16% impairment. On February 4, 2015, the claims administrator granted 16% permanent partial disability for the lumbar spine and upper extremity based on Dr. Scott's report.

Dr. Scott performed an independent medical evaluation regarding Mr. Ashley's cervical spine on March 10, 2015. Dr. Scott diagnosed cervical sprain. Based on comparisons of the December 5, 2009, and April 30, 2014, cervical spine MRIs, Mr. Ashley had evidence of degenerative disease of the cervical spine at least back as far as December 5, 2009. Dr. Scott assessed 0% impairment for the cervical spine. On April 23, 2015, the claims administrator granted 0% permanent partial disability for the cervical sprain/strain.

Bruce Guberman, M.D., performed an independent medical evaluation on July 16, 2015. He diagnosed chronic post-traumatic strain of the left shoulder, chronic post-traumatic strain of the left wrist with a history of scaphoid fracture, chronic post-traumatic strain of the cervical spine, and chronic post-traumatic strain of the lumbar spine. He assessed 16% impairment for the left upper extremity due to range of motion abnormalities of the wrist, elbow, and shoulder; 8% impairment for the cervical spine; and 8% impairment for the lumbar spine for a combined total of 29% whole person impairment.

On September 11, 2015, Robert Walker, M.D., performed an independent medical evaluation. He assessed 8% impairment for the cervical spine and 7% impairment for the lumbar spine, which he combined for a total of 14% whole person impairment. Dr. Walker also assessed 11% impairment for the left upper extremity. He combined the impairment ratings for a total of 23% whole person impairment.

Saghir Mir, M.D., performed an independent medical evaluation on January 20, 2016. He diagnosed status post-op arthroscopic subacromial decompression and shaving of lateral end of clavicle, healed fracture of left radial head and coronoid process of the elbow, healed injury, left wrist, chronic cervical and lumbar strain superimposed on pre-existing degenerative changes in the neck and low back; and history of chronic neck and back pain from pre-existing causes at least since 2008 even prior to the injury. Dr. Mir assessed 10% impairment for the cervical spine and apportioned half of that to the pre-existing neck problems. He assessed 10% impairment for the lumbar spine and apportioned half of that to the pre-existing back problems. He assessed 8% impairment for the left upper extremity, of which he apportioned 1% to the pre-existing left upper extremity problems. Dr. Mir assessed 16% whole person impairment due to the injury.

Marsha Bailey, M.D., performed an independent medical evaluation on March 7, 2016. Dr. Bailey diagnosed simple sprains and strains of the cervical and lumbar spine that had resolved. She noted that Mr. Ashley had chronic cervical and lumbar pain which predated the injury by many years. He also had impingement syndrome due to the normal aging process. Dr.

Bailey opined that Mr. Ashley's left wrist and elbow injuries had resolved with only mild objective functional impairment. Dr. Bailey assessed 4% impairment for the cervical spine, but reduced it to 0% per West Virginia Code of State Rules §20 (2006). She assessed 5% impairment for the cervical spine but reduced it to 0%. Dr. Bailey assessed 9% impairment for the left upper extremity. She opined that 6% was due to the distal clavicle excision and subacromial decompression that were performed solely to treat his pre-existing degenerative joint disease. The remaining 3% of the left upper extremity rating was apportioned to the claimant's work injury. Dr. Bailey assessed 3% whole person impairment for the injury. In Dr. Bailey's opinion, Mr. Ashley's complaints far outweighed his objective findings.

The Office of Judges reversed the claims administrator's February 4, 2015, award of 16% permanent partial disability and granted 3% permanent partial disability for the left upper extremity on June 17, 2016. The Office of Judges also affirmed the claims administrator's April 23, 2015, award of 0% permanent partial disability for the cervical spine.

The Office of Judges noted that there were five independent medical evaluation reports in the record and of those five reports, Dr. Bailey's was the most accurate and reliable assessment of Mr. Ashley's impairment. The Office of Judges found the reports of Drs. Guberman, Walker, and Scott unreliable because they failed to apportion any impairment for Mr. Ashley's significant pre-existing lumbar and cervical spine conditions. The evidentiary record included diagnostic testing which showed L5-S1 disc bulging and multi-level cervical disc degeneration. Additionally, Mr. Ashley was treated for complaints of severe neck and low back pain from 2012 up until a few weeks before the compensable injury. The medical records of Dr. Patel showed treatment for the lumbar and cervical spine fifteen days before the injury. The Office of Judges found the evidence clearly showed Mr. Ashley had a pre-existing impairment of the cervical and lumbar spine. The only compensable diagnoses for the lumbar and cervical spine were lumbar and cervical sprain. Therefore, it was reasonable to conclude the significant pre-existing lumbar and cervical conditions were producing some degree of whole person impairment.

The Office of Judges also determined that neither Dr. Guberman nor Dr. Walker addressed the pre-existing lumbar and cervical spine conditions. It appeared from their reports that they were not aware of the pre-existing problems. Therefore, their reports were found to be unreliable. Dr. Scott was aware of the pre-existing problems, but failed to apportion any of the impairment to the pre-existing conditions. The Office of Judges also found the report of Dr. Mir unreliable. While he did apportion for the pre-existing impairments, he did so prior to the application of Rule 20. His method of apportionment rendered his impairment assessment unreliable.

The Office of Judges then found that Dr. Bailey's assessment of Mr. Ashley's impairment was supported by the evidence of record. Dr. Bailey found no impairment for the compensable lumbar and cervical spine injuries; therefore it was not necessary to apportion the impairment. Additionally, Dr. Bailey determined the claimant had a total of 9% impairment for the left upper extremity. She apportioned 6% of that to the pre-existing conditions. Her apportionment for the resection arthroplasty of the left shoulder is supported by the evidence. The claim was compensable for a left shoulder sprain. The June 9, 2014, surgery was for a partial

rotator cuff tear and grade three chondromalacia of the humeral head. Neither of these were compensable conditions.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the Order on November 21, 2016. After review, we agree with the Board of Review. The Office of Judges meticulously sorted through all of the medical evidence. It determined that Dr. Bailey's report was the most reliable and explained in detail why the reports of Dr. Scott, Dr. Guberman, Dr. Walker, and Dr. Mir were not reliable. The Board of Review did not err by relying on the report of Dr. Bailey. Mr. Ashley had significant pre-existing problems with his cervical spine, lumbar spine, and shoulder. The impairment resulting from the first injury and surgery "shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury". See *West Virginia Code §23-4-9(b), Gill v. City of Charleston, 232 W.Va. 573, 783 S.E2d 88 (2016).* Dr. Bailey did not take the pre-existing problems into consideration when assessing impairment.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  October 10, 2017**

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

5